**Victor and Mary Coty, Donald and Dorothy Nelson d/b/a Stowe Country Shop and Anton and Pamela Flory d/b/a Die Alpen Rose Motel v. Ramsey Associates, Inc.; Normand Ramsey and Raymond Ramsey**

[573 A.2d 694]

No. 88-346

Present: Peck,[1] Dooley and Morse, JJ., and Barney, C.J. (Ret.) and Dier, Supr. J. (Ret.), Specially Assigned

Opinion Filed April 6, 1990

---

[1] Justice Peck sat for oral argument but did not participate in the decision.

*Harold B. Stevens*, Stowe, for Plaintiffs-Appellants.

*Robert D. Rachlin* and *Anita Tuttle* of *Downs, Rachlin & Martin*, Burlington, and *Peter L. Murray* and *Thomas C. Newman* of *Murray, Plumb & Murray*, Portland, Maine, for Defendants-Appellees Ramsey Associates, Inc., and Normand Ramsey.

**Dooley, J.** This is the second appeal generated in the course of protracted litigation concerning the establishment of a deliberately offensive pig farm in Stowe. The relevant facts are detailed in *Coty v. Ramsey Associates, Inc.*, 149 Vt. 451, 546 A.2d 196 (1988), in which we affirmed the trial court's ruling that the pig farm was a nuisance and upheld the court's award of compensatory damages. Nevertheless, we reversed in part because the $380,000 punitive damages award was assessed with respect to Raymond Ramsey as well as the other defendants. We concluded that the evidence did not support an award of punitive damages against Raymond Ramsey, and we remanded the case for reconsideration of those damages based on Normand Ramsey's financial status and culpability. *Id.* at 465–66, 546 A.2d at 206. We went on to hold, however, that the trial court's punitive damages awards were neither manifestly nor grossly excessive. *Id.* at 467, 546 A.2d at 206.

After the remand, the parties resubmitted the case based solely on the pre-existing record and a brief argument. Plain-

tiffs requested that the preappeal punitive damages award of $380,000 be reinstated in a judgment solely against Normand Ramsey and Ramsey Associates, Inc. Defendants urged that no punitive damages be awarded because defendants' activities were protected by the First Amendment and because the punitive damages award violated the Eighth and Fourteenth Amendments to the United States Constitution. Defendants also urged the court to "[reappraise] the facts and circumstances" of the case and deny punitive damages based on that reappraisal. In response, the trial judge filed a minority opinion reaffirming the previous award of punitive damages, this time assessing that amount against Normand Ramsey and Ramsey Associates, Inc. The assistant judges disagreed, terming the award "excessive," and ordered punitive damages in the amount of $25,000 to each plaintiff.[2] Plaintiffs appeal, and we reverse.[3]

Plaintiffs maintain, inter alia, that the trial court failed to comply with this Court's mandate on remand. Because we agree with this contention, we do not address their other arguments.

---

[2] Because of a turnover in the assistant judge positions, these assistant judges were not those who had sat on the case at trial. They made their ruling after "reviewing the Supreme Court decision and Judge Linda Levitt's opinion at some length."

[3] Defendants also cross-appealed arguing that the punitive damages award violated the First Amendment because their pig farm was created as a form of protest, the Eighth Amendment because it was an excessive fine, and the Fourteenth Amendment because there are no standards upon which the award is based. The first argument was never raised at trial or in this Court on appeal, probably because the defendants were insisting throughout the trial and appeal that they were running a legitimate and appropriate farm in order to make a profit. They could have pleaded and pursued the protest theory as an alternative defense but failed to do so. See V.R.C.P. 8(e)(2) (defenses may be pled alternatively). We think they are now foreclosed from raising the protest theory for the first time at the post-remand hearing.

The second theory was considered and rejected in our first opinion. *Coty v. Ramsey Associates, Inc.*, 149 Vt. at 468, 546 A.2d at 207. The third theory is briefed in passing, relying only on an excerpt from a concurring opinion in *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 87 (1988) (O'Connor, J., concurring). We find this briefing to be wholly inadequate. We believe this theory was waived by the failure to raise it at the first trial and, in any event, is not supportable given the circumstances of this case.

■■ The lower court was acting pursuant to our mandate and thus was limited to following our specific directions as interpreted in light of the opinion. See *Halpern v. Kantor*, 139 Vt. 365, 367, 428 A.2d 1132, 1134 (1981). This rule must be viewed in the context of the doctrine of law of the case as applied to decisions of this Court:

> "It is a rule of general application that a decision in a case ... of last resort is the law of that case on the points presented throughout all the subsequent proceedings therein, and no question then necessarily involved and decided will be reconsidered by the Court in the same case on a state of facts not different in legal effect." ... [T]he result [of reversing former decisions in the same case] would be mischievous because if all such questions are to be regarded as still open for discussion and revision in the same cause, there would be no end to the litigation until the ability of the parties or the ingenuity of their counsel were exhausted.

*Perkins v. Vermont Hydro-Electric Corp.*, 106 Vt. 367, 415–16, 177 A. 631, 653 (1934) (quoting *Barclay v. Wetmore & Morse Granite Co.*, 94 Vt. 227, 230, 110 A. 1, 2 (1920)). In *Belock v. State Mutual Fire Insurance Co.*, 108 Vt. 252, 255, 185 A. 100, 101–02 (1936), the Court applied the principle to the refusal of the trial court to set aside a verdict as against the weight of the evidence, holding that the original decision could not be reexamined after a remand "unless the evidence at the retrial was materially different." Thus, the "law of the case" policy is also applicable to fact questions where there has been no new evidence. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 799–800 (1981) (questions of fact "absent significant new evidence" are particularly unsuited for reconsideration following a remand).

It was clear from the evidence presented at the original trial that Raymond Ramsey was the least culpable and least wealthy of the defendants.[4] The remand was made necessary solely because of the removal of Raymond Ramsey as a punitive dam-

---

[4] In the course of assessing punitive damages, the financial status of the least wealthy defendant must be taken into account. *Woodhouse v. Woodhouse*, 99 Vt. 91, 155, 130 A. 758, 788 (1925).

ages defendant. Once he was removed as a limiting factor, any adjustment in the assessment—which was to have been made with respect to the facts as found by the trial court—would necessarily have been an increase.

■ The downward adjustment in the punitive damages was made because the majority of the court found the prior amount to be "excessive," and because the compensatory damages award satisfied the demands of plaintiffs as shown by the evidence. The remaining punitive damages they awarded were to compensate the plaintiffs for "aggravation." It is clear from these reasons that the court accepted defendants' invitation to reexamine the prior punitive damages award as if it never occurred. In doing so, the court directly contradicted our decision that the earlier award was not excessive and changed the theory of punitive damages to one of compensation. Absent new evidence, the court's action was exactly the type of relitigation of a previously-concluded issue that the *Perkins* Court cautioned against. Our mandate cannot be read to allow such a reconsideration of the punitive damages award against Ramsey Associates, Inc. and Normand Ramsey.

■ Because plaintiffs do not seek an increase in the amount of punitive damages originally assessed, we will enter judgment here. Plaintiffs seek interest on the punitive damages award from the date of the original judgment. Although prejudgment interest is generally unavailable on punitive damages awards, see *Turcotte v. Estate of LaRose*, 153 Vt. 196, 200, 569 A.2d 1086, 1088 (1989), we agree that the amount of the punitive damages were established in the original judgment, and interest should accrue from that date.

*The superior court's judgment is reversed and its order dated June 2, 1988, is vacated. Punitive damages are assessed against defendants Normand Ramsey and Ramsey Associates, Inc., in the following amounts, plus interest from August 15, 1985, the date of the original judgment: Plaintiffs Victor and*

*Mary Coty are awarded $80,000; plaintiff Nelson is awarded $150,000; and plaintiffs Anton and Pamela Flory are awarded $150,000. These awards are made in addition to those already affirmed.*