**Donald and Claudette Bissonnette v. Nicholas J.H. Wylie, Daniel E. Mendl and Martin V. Lavin**

[654 A.2d 333]

No. 92-406

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed June 3, 1994

Opinion on Motion for Reargument Filed October 28, 1994

*Donald E. O'Brien*, Burlington, for Plaintiffs-Appellants.

*Leslie C. Pratt*, South Burlington, for Defendants-Appellees.

**Gibson, J.** Plaintiffs Donald and Claudette Bissonnette appeal from a summary judgment order in favor of defendants Daniel Mendl and Martin Lavin, claiming the court erred in holding that comakers of a

promissory note may be discharged under 9A V.S.A. § 3-606 when the creditor unjustifiably impairs the collateral.[1] We hold that the § 3-606 defense is available to a comaker only if the comaker is in the position of a surety. Because we conclude that defendants Mendl and Lavin were sureties, both as to their comaker Nicholas Wylie and as to plaintiffs, we affirm the decision of the trial court discharging Mendl and Lavin.

On February 5, 1986, plaintiffs and defendants Wylie, Mendl and Lavin entered into a purchase and sales agreement in which defendants agreed to purchase approximately three acres of land with a three-story condominium building from plaintiffs for $210,000. The property was adjacent to another parcel of land owned by defendants. The agreement provided that defendants would pay plaintiffs $110,000 in cash, obtained from a bank and secured by a first mortgage, and $100,000 in the form of a promissory note secured by a second mortgage to plaintiffs. Plaintiffs agreed "to subordinate the second mortgage at Purchasers' option for any purposes of improving, preserving and developing the property." The sale was completed in June 1986.

In November 1986, defendants borrowed approximately $1,600,000 from the Vermont National Bank to finance construction of an office building on the adjoining property, and thereafter executed a new mortgage deed to secure the original promissory note to plaintiffs. The new mortgage was subject to three mortgage deeds—the first mortgage of $ 110,000 and two others dated November 3, 1986—all to the Vermont National Bank in the total amount of $1,650,000. The new mortgage covered both properties owned by defendants.

On May 3, 1989, defendants Wylie, Mendl and Lavin transferred their interest in the properties to defendant Wylie alone, who agreed to assume the mortgage to plaintiffs and to indemnify the other two defendants if either were obligated to pay any sums as a result of the mortgage or promissory note. Plaintiffs were notified of this transaction by letter but were not asked to consent to the transfer or to Wylie's assumption of the debt. The transfer included the parcel and condominium building purchased from plaintiffs and the adjacent parcel with its newly constructed office building.

---

[1] Plaintiffs also claim the court erred in applying the standard of reasonable care of 9A V.S.A. § 9-207 when the collateral was not in the possession of the creditor, and in granting summary judgment when there were genuine issues of material facts concerning the extent of any impairment of the collateral. We do not reach these issues.

Defendant Wylie subsequently requested that plaintiffs further subordinate their mortgage, pursuant to the original purchase and sales agreement, so that he could obtain an additional loan to build another office building on the adjoining parcel. On June 30, 1989, plaintiffs subordinated their mortgage, as requested, to a new mortgage to the Bank of Vermont securing a $2,600,000 loan to defendant Wylie. Defendants Mendl and Lavin were not notified of, nor did they consent to, this transaction. The parties dispute whether plaintiffs were required to subordinate their mortgage under the terms of the original purchase and sales agreement.

Following default, plaintiffs brought this suit against all three defendants to enforce the original $100,000 promissory note. Defendants Mendl and Lavin asserted as an affirmative defense that plaintiffs had unjustifiably impaired the collateral securing the note by subordinating their mortgage to the $2,600,000 mortgage to the Bank of Vermont, and thereby had discharged them from any obligation under the note. Subsequent to bringing the suit, and in exchange for approximately $11,000, plaintiffs discharged their mortgage on the portion of land mortgaged to the Bank of Vermont. Defendants claim that this discharge also unjustifiably impaired the collateral by reducing the amount of real property that secured the note.

On cross-motions for summary judgment, the court ruled that 9A V.S.A. § 3-606 would apply to discharge the obligation of defendants Mendl and Lavin under the $100,000 note if plaintiffs had unjustifiably impaired the collateral. Because plaintiffs had subordinated their mortgage to the $2,600,000 Bank of Vermont mortgage and then discharged a substantial portion of the real property securing the note, the court concluded that plaintiffs had unjustifiably impaired the collateral. Consequently, it granted defendants' motion for summary judgment. This appeal followed.

Plaintiffs argue that 9A V.S.A. § 3-606(1)(b) provides a suretyship defense that does not apply to defendants Mendl and Lavin as comakers of the $100,000 promissory note. Section 3-606(1)(b) states: "The holder discharges *any party to the instrument* to the extent that without such party's consent the holder . . . unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." (Emphasis added.) The superior court held that the language "any party to the instrument" was unambiguous and included defendants Mendl and Lavin as comakers of the note.

Plaintiffs maintain, however, that despite the apparent plain language of the statute, the comments to the Uniform Commercial Code (UCC), from which § 3-606 was adopted, indicate that the section was intended to codify a suretyship defense and therefore should not include comakers of a note. The comments provide:

> The words 'any party to the instrument' remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to *any party who is in the position of a surety*, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so. (Emphasis added.)

Based on this language, plaintiffs argue that the Court should hold that comakers cannot be discharged under § 3-606.

Our primary objective in construing a statute is to give effect to the intent of the Legislature. *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). Generally, we presume the Legislature intended the plain meaning of the words it used, but where doubt exists, we rely on other rules of statutory construction. *State v. Papazoni*, 159 Vt. 578, 580–81, 581 n.1, 622 A.2d 501, 503, 503 n.1 (1993). "When our statute is taken from a model act, it is often helpful to examine the intent behind the model act." *Id.* at 581, 622 A.2d at 503.

Section 3-606 is adopted from the UCC. See Uniform Commercial Code § 3-606, 2A U.L.A. 481 (1991). "To aid in uniform construction the[] [UCC] Comments set forth the purpose of various provisions of this Act to promote uniformity, to aid in viewing the Act as an integrated whole, and to safeguard against misconstruction." 9A V.S.A. Introduction to Uniform Laws Comments, at xxix. We regard the comments to the UCC as a strong indication of the Legislature's intent in adopting a particular UCC provision. In construing § 3-606, the vast majority of courts have relied on the accompanying UCC comment and ruled that the section is intended to provide a suretyship defense that is available only to a party in the position of a surety. *Great Southwest Life Ins. Co. v. Frazier*, 860 F.2d 896, 900 (9th Cir. 1988); see also 1 J. White & R. Summers, Uniform Commercial Code § 13–15, at 666 (3d ed. 1988) (surety may claim discharge under § 3-606).

■ The history of this section also supports this construction. Vermont adopted the UCC in 1966 and simultaneously repealed the

Uniform Negotiable Instruments Act. 1966, No. 29, §§ 1, 3. The predecessor to § 3-606 was § 120 of the Uniform Negotiable Instruments Act, which provided the circumstances under which a "person secondarily liable on the instrument is discharged." Uniform Negotiable Instruments Act § 120, 5 (Part 2) U.L.A. 545 (1943); 9 V.S.A. § 572 (1958). The comment to § 3-606 makes clear that the intention of using the words "any party" in the new provision was to ensure that the defense was available to all persons in the position of sureties, not only those secondarily liable as in the original provision. In view of the statutory history and the UCC comment, we join the majority of courts and hold that § 3-606 provides a defense to any party who is in the position of a surety.

Defendants rely on *Bishop v. United Missouri Bank*, 647 S.W.2d 625, 629 (Mo. Ct. App. 1983), which held that the words "any party," as used in § 3-606, includes comakers. In reaching this holding, the Missouri court stated: "It is well-settled law that in ascertaining the meaning of the statute, we must look to the express language of the law irrespective of what may have been intended." *Id.* This is not the rule in Vermont.[2] See *Papazoni*, 159 Vt. at 580 n.1, 622 A.2d at 503 n.1. Further, only a small minority of courts have adopted the strict plain-meaning approach, discharging a comaker under § 3-606 without any showing that the comaker was a surety. See, e.g., *Rushton v. U.M. & M. Credit Corp.*, 434 S.W.2d 81, 83 (Ark. 1968) ("any party to the instrument" is broad enough to include all makers under § 3-606); *Southwest Florida Prod. Credit Ass'n v. Schirow*, 388 So. 2d 338, 339 (Fla. Dist. Ct. App. 1980) (clear and unambiguous language "any party" includes comaker). But see *Lyons v. Citizens Commercial Bank*, 443 So. 2d 229, 232 (Fla. Dist. Ct. App. 1983) (calling *Schirow* into question but deciding case on other grounds).

Although most courts agree that § 3-606 applies only to sureties, few consider the possibility that a comaker could be in the position of a surety. In cases like the instant case, where a third party has assumed the comaker's debt, jurisdictions are about evenly split on whether the comaker may assert the § 3-606 defense.[3] Compare

---

[2] *Bishop* is also one of the few cases holding that a comaker may be discharged under § 3-606 to the extent that the comaker has a right to contribution from other comakers. 647 S.W.2d at 629-30. These cases conclude that the comaker is in the position of a surety to the extent of this right. See, e.g., *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985).

[3] In most cases holding that § 3-606 does not discharge a comaker, the comaker's debt had not been assumed by another party. See, e.g., *Farmers State Bank v. Cooper*, 608

*Hughes v. Tyler*, 485 So. 2d 1026, 1029 (Miss. 1986) (allowing maker to assert § 3-606 defense where creditor had consented to assumption of debt by third party); *Smiley v. Wheeler*, 602 P.2d 209, 212 (Okla. 1979) (§ 3-606 does not discharge makers unless they have become sureties on the note); *Hemenway v. Miller*, 807 P.2d 863, 866–67 (Wash. 1991) (original makers of note became sureties entitled to assert § 3-606 defense if creditor received notice and consented to assumption of debt by third party), with *Wohlhuter v. St. Charles Lumber & Fuel Co.*, 338 N.E.2d 179, 181–82 (Ill. 1975) (§ 3-606 defense not available to comakers although third party had assumed comakers' debt); *Campo v. Maloney*, 442 A.2d 997, 1001–02 (N.H. 1982) (defendant, principal maker, could not be discharged under § 3-606 although comakers had assumed his debt).

■ Few cases have provided any rationale for holding that, because § 3-606 is a suretyship defense, it does not apply to comakers. One explanation, advanced in *Schmuckie v. Alvey*, 758 S.W.2d 31 (Ky. 1988), was that § 3-606 did not discharge comakers because, unlike accommodation makers, comakers have no recourse on the instrument. *Id.* at 34; see also *El-Ce Storms Trust v. Svetahor*, 724 P.2d 704, 707 (Mont. 1986) (party in position of surety has right of recourse on the instrument). We do not find this explanation persuasive because there is nothing in the statute or the comment that limits a discharge pursuant to § 3-606 to parties with a right of recourse *on the instrument*. Indeed, the comment specifically states that the defense is "available to any party who is in the position of a surety, having a right of recourse either *on the instrument or dehors it*."[4] (Emphasis added.) We disagree with those jurisdictions that hold a comaker can never be in the position of a surety, and we hold that § 3-606 may discharge a comaker if the comaker has become a surety.

■ Defendants Mendl and Lavin contend that they altered their position from that of principals on the note to sureties upon defendant Wylie's assumption of the debt. They rely on *Perry v. Ward*, 82 Vt. 1,

P.2d 929, 933-34 (Kan. 1980); *Schmuckie v. Alvey*, 758 S.W.2d 31, 34-35 (Ky. 1988); *El-Ce Storms Trust v. Svetahor*, 724 P.2d 704, 707 (Mont. 1986); *Utah Farm Prod. Credit Ass'n v. Watts*, 737 P.2d 154, 160 (Utah 1987); *State Bank of Hartland v. Arndt*, 385 N.W.2d 219, 222 (Wis. Ct. App. 1986); see also *First National Bank v. Burgess*, 798 P.2d 472, 475 (Idaho Ct. App. 1990) (sole maker may not assert § 3-606 defense).

[4] "Dehors" is defined as "out of" or "foreign to" as in "out of the agreement, record, will, etc." Webster's New International Dictionary (2d ed. unabridged 1959); see also Black's Law Dictionary (5th ed. 1979) ("out of; without; foreign to; unconnected with . . . . Dehors the record; foreign to the record").

71 A. 721 (1909), to support their contention. In *Perry*, the creditor foreclosed on property secured by a note and mortgage, and then sued the maker of the note for unpaid interest due on the note. The maker (Perry) settled the suit by paying the interest, then sought to recoup the interest and his costs of litigation from third parties who had agreed to assume his debt when they acquired the property. This Court held that, as between the maker and the third parties, the maker became a surety when the third parties assumed the debt. *Id.* at 4, 71 A. at 722. Thus, the maker could recover his out-of-pocket costs of litigation from the third parties.[5] Applying the *Perry* rule in this case would allow defendants Mendl and Lavin to recover from defendant Wylie any monies they might be required to pay plaintiffs on the note, inasmuch as they had become sureties with respect to defendant Wylie.

Finally, we come to the question of whether defendants Mendl and Lavin are sureties with respect to plaintiffs, and thus entitled to invoke the legal defenses available to a surety. We hold that they are. In so holding, we reject plaintiffs' contention that the maker of a mortgage note may not be transformed into a surety upon the assumption of the note by a third party; rather, a principal debtor may become a surety by operation of law when "one or more of the other co-principals contracts to assume the entire duty of performance." Restatement of Security § 83(d) (1941). A creditor, however, is not bound by the incidents of the suretyship until the creditor obtains actual knowledge of the suretyship. See *id.* § 114 ("Where . . . a principal becomes a surety, the creditor is affected by the incidents of suretyship from the time he has knowledge of it."); see also *id.* cmt. c ("The negative inference of the rule of this Section is that the creditor is not bound by the incidents of suretyship unless he knows of it.").

Knowledge of the suretyship requires actual knowledge, not mere notice, of the change in relationship among principals. See *id.* cmt. b ("The word 'knowledge' rather than notice is used . . . to show that the creditor is not bound by the surety relation unless he in fact knows about it."). In this case, plaintiffs had actual knowledge of the changed relationship between Wylie and defendants Mendl and Lavin

---

[5] The Court ruled that the plaintiff could not recoup the interest from the third parties because he had paid it erroneously; the creditor had been paid in full when the foreclosure became absolute.

for, as the trial court found, plaintiffs received a letter from Wylie's attorney informing them of Wylie's assumption of the debt.

■ Once a creditor has knowledge of the suretyship, the creditor is "required to take account of the relationship in subsequent dealings with the parties." *Id.* cmt. a; *see also Everts v. Matteson*, 132 P.2d 476, 483 (Cal. 1942) (en banc) ("Although the creditor may treat both the grantor and grantee as debtors, yet, after receiving knowledge of the assumption, he must recognize the relation of suretyship and respect the rights of the surety in all of his subsequent dealings with them."). This includes consideration of the availability of the suretyship defenses granted under 9A V.S.A. § 3-606. Therefore, once plaintiffs had knowledge that defendants Mendl and Lavin had become sureties, plaintiffs were subject to the § 3-606(1)(b) defense of impairment of collateral.

Creditors must recognize suretyships even if they have not consented to the change in relationship among principal debtors. See Restatement of Security, *supra*, § 114 cmt. a ("The rule stated in this Section . . . requires the creditor to recognize a suretyship relation to which he has not consented . . . ."); *State v. McKinnon*, 667 P.2d 1239, 1242 n.4 (Alaska 1983) ("Notice to the creditor and not actual consent is needed to bind him to the new arrangement."); *Horman v. Gordon*, 740 P.2d 1346, 1353-54 (Utah Ct. App. 1987) (quoting *McKinnon*, and holding that creditor who had knowledge of suretyship was subject to incidents thereof, including fact that creditor's discharge of principal also discharged surety). But see *Hemenway*, 807 P.2d at 866 (creditor must not only have actual knowledge of change in relationship, but must also consent thereto in order for original makers of note to become sureties).

■ Requiring knowledge of, but not consent to, a surety relationship in no way diminishes the rights of a creditor against the original principal; the principal cannot, by his own actions alone, effect a change in that relationship. See Restatement of Security, *supra*, § 114 cmt. a ("The rule does not deprive the creditor of his rights against the original principal. No person who is bound to a creditor can by any act of his own rid himself of his duty to the creditor."). Nevertheless, having knowledge that a principal has become a surety, the creditor may affect the relationship if he subsequently takes action that would jeopardize the security for the debt; in such event, the principal who has become a surety may invoke the defenses afforded by § 3-606. See, e.g., 9A V.S.A. § 3-606(1)(b) (holder

discharges any party to instrument if holder unjustifiably impairs any collateral).

In the case at bar, our holding would prejudice plaintiffs' rights as creditors only if Vermont law required a creditor to first sue the principal on the debt, then pursue the sureties. Were that the Vermont rule, and it is not, then allowing defendants Mendl and Lavin to alter their status from principals to sureties without plaintiffs' consent would indeed prejudice plaintiffs' rights in the event of default. Instead, however, a creditor who sues a surety cannot be compelled to bring in other principals on the debt. See Restatement of Security, *supra*, § 114 cmt. a ("The creditor is not required first to have recourse against the one who is in fact the principal but can require performance from the surety as soon as performance is due."); cf. *id.* cmt. d (noting that in certain circumstances, some states by statute, and after formal demand by surety, require creditor to proceed first against principal).

In closing, we note that were we to require that a creditor consent to the surety relationship, we would risk eviscerating the § 3-606 suretyship defenses; a creditor would not consent to a surety relationship if, by withholding consent, the creditor could guarantee that the suretyship defenses would be unavailable. Such a result would contravene our recognition "that a surety deserves every reasonable protection which the good faith of the parties could ensure." *Westinghouse Elec. Supply Co. v. B.L. Allen, Inc.*, 138 Vt. 84, 97, 413 A.2d 122, 130 (1980). Instead, the result we reach today ensures that sureties are reasonably protected against a creditor's unilateral change of the underlying obligation, yet also protects creditors by not binding them to recognition of the incidents of suretyship absent actual knowledge of the surety relationship.

*Affirmed.*

## On Motion for Reargument

**Gibson, J.** Plaintiffs Donald and Claudette Bissonnette appealed from a summary judgment, which discharged defendants Daniel Mendl and Martin Lavin from their obligation on a promissory note on the ground that plaintiffs had unjustifiably impaired the collateral. They argued that the court erred (1) in holding that the comakers of a promissory note could be discharged from their obligation under 9A V.S.A. § 3-606 when the creditor unjustifiably impairs the collateral, (2) in applying the standard of reasonable care in 9A V.S.A. § 9-207

when the collateral was not in the possession of the creditor, and (3) in granting summary judgment when there were genuine issues of material fact concerning the extent of any impairment of the collateral.

Addressing the first issue, we held that the § 3-606 defense is available to a comaker if the comaker is in the position of a surety, and that once plaintiffs had actual knowledge that defendant Wylie had assumed the obligation under the $100,000 promissory note, defendants Mendl and Lavin became sureties entitled to assert the § 3-606 suretyship defense. *Bissonnette v. Wylie*, 162 Vt. 598, 606, 654 A.2d 333, 338 (1994) (*Bissonnette I*). Following this decision, plaintiffs filed a motion to reargue, requesting that we address the other two issues raised by them. Defendants Daniel Mendl and Martin Lavin concede that plaintiffs are entitled to a ruling on these issues. We address these two issues herein.

To set the context, we recapitulate some of the facts set forth in *Bissonnette I*. The record reveals only a sketchy overview of the relevant facts. In February 1986, plaintiffs and defendants Wylie, Mendl and Lavin entered into a purchase and sales agreement in which defendants agreed to purchase a parcel of land and the buildings thereon (parcel 1) from plaintiffs for $210,000. Defendants already owned the land adjacent thereto (parcel 2). The agreement provided that defendants would pay plaintiffs $110,000 in cash, obtained from a bank and secured by a first mortgage, and $100,000 in the form of a promissory note secured by a second mortgage. Although the agreement is not in the record, the parties concur that plaintiffs agreed "to subordinate the second mortgage at Purchasers' option for any purposes of improving, preserving and developing the property." The parties completed the sale in June 1986.

In November 1988, defendants executed a new mortgage deed to secure the original promissory note to plaintiffs. The new mortgage was subject to three mortgage deeds to the Vermont National Bank in the combined amount of $1,650,000, and covered both parcel 1 and parcel 2. On May 3, 1989, defendants Wylie, Mendl, and Lavin transferred their interest in both parcels to defendant Wylie alone, who agreed to assume the mortgage to plaintiffs and to indemnify the other two defendants if either were obligated to pay any sums as a result of the mortgage or promissory note. Plaintiffs were notified of this transaction by letter on April 28, 1989.

Defendant Wylie subsequently requested that plaintiffs subordinate their mortgage, pursuant to the original purchase and sales

agreement, so that he could obtain a loan to build an office building on parcel 2. On June 30, 1989, plaintiffs subordinated their mortgage, as requested, to a new mortgage to the Bank of Vermont securing a $2,600,000 loan to defendant Wylie. Defendants Mendl and Lavin were not notified of this transaction. The parties dispute whether plaintiffs were required to subordinate their mortgage under the terms of the original purchase and sales agreement.

Following default, plaintiffs filed suit against all three defendants to enforce the original $100,000 promissory note. Defendants Mendl and Lavin asserted that, pursuant to 9A V.S.A. § 3-606, they had been discharged from any obligation under the note because plaintiffs had unjustifiably impaired the collateral securing the note. On cross-motions for summary judgment, the court concluded that plaintiffs had unjustifiably impaired the collateral by (1) subordinating their mortgage to the $2,600,000 Bank of Vermont mortgage, and (2) subsequent to filing this suit, discharging their mortgage on the portion of property mortgaged to the Bank of Vermont in exchange for approximately $11,000. The court, therefore, granted defendants' motion for summary judgment. Plaintiffs appealed.

In *Bissonnette I*, we held that the § 3-606 defense was available to defendants Mendl and Lavin although comakers because, once plaintiffs had actual knowledge that defendant Wylie had assumed the obligation under the $100,000 promissory note, defendants Mendl and Lavin became sureties and were entitled to assert the § 3-606 suretyship defense. *Bissonnette*, 162 Vt. at 606, 654 A.2d at 338. Plaintiffs' first argument herein is that the court erred in construing the § 3-606 defense by applying the standard of reasonable care in 9A V.S.A. § 9-207 where the collateral was not in the possession of the creditor.

Section 3-606(1)(b) states: "The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." To obtain a discharge under § 3-606, defendants have a two-fold burden. First, they must establish that the collateral was unjustifiably impaired, and second, they must establish the extent of that impairment. *Bank South v. Jones*, 364 S.E.2d 281, 284 (Ga. Ct. App. 1987). The official comment to § 3-606 of the Uniform Commercial Code states that, in establishing the first prong, "the section on rights and duties with respect to collateral in the possession of a secured party (Section 9-207) should be consulted." 9A V.S.A. § 3-606

(Uniform Laws Comments). Section 9-207 imposes upon the secured party a standard of "reasonable care in the custody and preservation of collateral in his possession." 9A V.S.A. § 9-207(1).

■ ■ Plaintiffs argue that the court erred in applying the standard of reasonable care set forth in 9A V.S.A. § 9-207 in determining that plaintiffs had unjustifiably impaired the collateral because the collateral was not in their possession. We agree that the duties imposed on a secured party who is not in possession of the collateral must be less than those imposed where the secured party has possession of the collateral. *Commercial Finance, Ltd. v. American Resources, Ltd.*, 737 P.2d 1120, 1128 (Haw. Ct. App. 1987). Moreover, § 9-207 enumerates specific duties of a creditor in possession of the collateral, while no such duties are enumerated for a creditor who is not in possession of the collateral. Nonetheless, § 3-606 codifies an equitable suretyship defense, and we believe that a standard of reasonable care is appropriate, provided the court considers all of the circumstances in the case, including whether a creditor not in possession of the collateral is in a better position than the surety to protect the surety's interest. See *Bank South v. Jones*, 364 S.E.2d at 284 (adopting this standard); *Bank of Ripley v. Sadler*, 671 S.W.2d 454, 457 (Tenn. 1984) (same); *Hemenway v. Miller*, 807 P.2d 863, 869 (Wash. 1991) (same).

■ In the instant case, many of the circumstances giving rise to this action are in dispute. Defendants have argued that they are discharged under 9A V.S.A. § 3-606 because plaintiffs unjustifiably impaired the collateral by (1) subordinating their mortgage to the $2,600,000 Bank of Vermont mortgage, and (2) discharging their mortgage on all of the property, except a .27-acre parcel, in return for $11,000. In response, plaintiffs claim that, pursuant to the original purchase and sales agreement, they were required to subordinate their mortgage at the buyers' request for purposes of development. They also maintain that the property released in exchange for $11,000 had no equity value above the value of the bank mortgages. None of these issues have been resolved by the trial court.

Indeed, plaintiffs' second argument is that summary judgment was inappropriate because there are material facts in dispute. See V.R.C.P. 56(c) (summary judgment appropriate where there is no genuine issue as to any material fact). We agree. Most importantly, there was no evidence before the court on the extent of the impairment, the second prong of defendants' burden. See *Smiley v. Wheeler*,

602 P.2d 209, 213 (Okla. 1979) (defendants must prove value of equipment lost); *El-Ce Storms Trust v. Svetahor*, 724 P.2d 704, 710 (Mont. 1986) (remanded to trial court to determine value of collateral lost). Failure to prove the value of the impairment bars any relief. *In re I.A. Durbin, Inc.*, 49 B.R. 528, 531 (S.D. Fla. 1985).

Defendants rely on *Hughes v. Tyler*, 485 So. 2d 1026 (Miss. 1986), and claim that, by showing that plaintiffs released most of the acreage securing the note, they have established the extent of the impairment. *Hughes* is inapposite, however. In that case, the property securing the note was land with a per-acre value. Here, the property involved includes land and buildings; no one has asserted a per-acre value on the land, and there is nothing in the record pertaining to the value of the buildings. The record is even unclear about the sites of the buildings. Summary judgment was not warranted because defendants did not meet their burden of establishing, as a matter of law, unjustifiable impairment, nor the extent of any impairment.

*Reversed and remanded.*