Donald J. and Claudette
BISSONNETTE v. Nicholas J.H.
WYLIE and Daniel E. Mendl

[711 A.2d 1161]

No. 97-269

April 7, 1998. This case is here for the third time. See *Bissonnette v. Wylie*, 162 Vt. 598, 654 A.2d 333 (1994) (*Bissonnette I*); *Bissonnette v. Wylie*, 166 Vt. 364, 693 A.2d 1050 (1997) (*Bissonnette II*). The litigation is between plaintiffs, creditors, and two defendant sureties, from whom plaintiffs now seek payment on a promissory note because they are unable to collect from the principal debtor. Before bringing this action, plaintiffs discharged their mortgage on the collateral securing the promissory note on which plaintiffs are attempting to collect. Defendants have argued that the discharge of the mortgage, in return for a payment of $10,457.50 by the bank that held the first mortgage, unjustifiably impaired the value of the collateral to the detriment of the sureties who will be required to pay the difference between the amount owed on the promissory note and the amount plaintiffs received for the mortgage. We affirm.

We held in *Bissonnette II* that plaintiffs' discharge of the mortgage violated defendants' rights under U.C.C. § 3-606 (1985), 9A V.S.A. § 3-606 (Supp. 1995) (after the events in this litigation, the section was replaced by 9A V.S.A. § 3-605), because they did not obtain defendants' consent to the discharge. We went on to describe defendants' remedy, if any:

This holding alone, however, is not determinative of the action.

As we held in *Bissonnette I*, defendants also have the burden to show the extent of any impairment in order to offset that amount against their liability. . . . The proper measure of such offset is the extent to which the collateral was discharged for consideration below its actual value. Although evidence was offered on this point, the trial court failed to make findings on the extent of impairment, if any. We remand for such determination.

*Bissonnette II*, 166 Vt. at 373, 693 A.2d at 1056.

The trial court decided the remand issue based on the evidence already before it. That evidence showed that amounts owed on prior mortgages far exceeded the value of the property on which plaintiffs held the junior mortgage so that the collateral had no value. It also included testimony of a loan officer for the bank that held the first mortgage to the effect that the bank would have paid plaintiffs more than $10,457.50 to discharge the mortgage although plaintiffs were unaware of the bank's position. Based on this evidence, the superior court ruled that the collateral had no value and, although the bank might have paid plaintiffs more to discharge the mortgage, the evidence did not clearly show how much more money plaintiffs would have received. Thus, the court concluded that defendants were not harmed by the sale and declined to modify its original judgment for plaintiffs.

We agree with defendants that the fact that plaintiffs' interest in the collateral

had no market value is not determinative, where plaintiffs' security interest had value to the bank that needed to clear it to protect its investment. The purpose of the rule we are implementing is to protect the sureties, and we must look at the impairment of the collateral from their perspective. See *In re Alcock*, 50 F.3d 1456, 1460 (9th Cir. 1995). Under our decisions in *Bissonnette I & II*, however, this holding helps defendants only if they discharged their burden to show the extent of impairment of the collateral. The trial court held that they did not discharge their burden because it was not clear how much the bank would have ultimately paid to discharge plaintiffs' mortgage.

In arguing for reversal, defendants first urge us to relieve them from the burden of proof imposed in *Bissonnette I & II*. They ask that we adopt the rule that the surety is discharged if there has been some impairment of the collateral, but it is impossible to determine how much. See *In re Alcock*, 50 F.3d at 1462; *Langeveld v. L.R.Z.H. Corp.*, 376 A.2d 931, 937 (N.J. 1977) ("[T]here are factual situations . . . where a surety may be able to establish that he has sustained prejudice, but be unable to measure the extent of the prejudice in terms of monetary loss. Where such a situation is presented the surety will normally be completely discharged."). For two reasons, we decline to apply the requested rule in this case.

First, we do not believe it was impossible for defendants to prove the extent of impairment of the collateral. Defendants put on one bank witness, a vice-president in charge of asset recovery, to show that the bank would have paid more to discharge plaintiffs' mortgage had plaintiffs refused the first offer. Defendants did not follow up the issue with the bank officer who actually negotiated with plaintiffs or offer an independent witness to estimate the value to the bank of discharging plaintiffs' mortgage, in view of the time and cost of instituting foreclosure to accomplish the same purpose.

By comparison, in *Alcock* the creditor impaired the collateral in a business by subordinating its security interest in real property to that of another creditor, while retaining the first-priority interest in the equipment. When the debtor defaulted, the business could not be sold as a unit because of the different security arrangements. The separate sale of the real property and the equipment produced less money than if they were sold together. The court found that determining the extent of the collateral's impairment involved "pure conjecture" and that the sureties suffered "'clear prejudice without precisely calculable loss.'" *In re Alcock*, 50 F.3d at 1463 (quoting *Langeveld*, 376 A.2d at 937). We do not believe that the facts of this case met that standard.

Second, this argument comes too late. Although *Bissonnette I* held that defendants bore the burden of proving the extent of the impairment of the collateral, they failed to argue in *Bissonnette II* that it was impossible to measure the extent of the impairment and that they should be relieved of liability once they showed that some impairment occurred. Obviously, if we had accepted that argument, the remand that led to this appeal would have been unnecessary. See *Coty v. Ramsey Assocs., Inc.*, 154 Vt. 168, 171, 573 A.2d 694, 696 (1990) (on remand, trial court is limited to specific directions in the remand order as interpreted in light of the opinion). Having failed to raise this argument when they first had the opportunity, defendants have waived it.

The superior court could not reduce plaintiffs' recovery based on speculation on the extent to which plaintiffs could have obtained more money from the bank to discharge the mortgage. See *Rice's Adm'r v. Press*, 117 Vt. 442, 450, 94 A.2d 397, 402 (1953). It is the trial court's function to evaluate the evidence, and we will not set aside that court's findings if they are supported by the evidence. See

*Gokey v. Bessette,* 154 Vt. 560, 564, 580 A.2d 488, 491 (1990). In this case, the trial court's conclusion is based on its inability to make a finding on collateral impairment. We see no error.

*Affirmed.*

Motion for reargument denied May 6, 1998.