NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 22

No. 24-AP-130

| | |
|---|---|
| In re Dousevicz, Inc. CU & Site Plan Approval (Kathleen Culpo et al., Appellants) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | January Term, 2025 |

Thomas S. Durkin, J.

Bridgett L. Remington of Pratt Vreeland Kennelly Martin & White Ltd., Rutland, for Appellants.

Christopher D. Roy of Downs Rachlin Martin PLLC, Burlington, for Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll and Waples, JJ., and Tomasi, Supr. J., Specially Assigned

¶ 1. **CARROLL, J.** Neighbors appeal an Environmental Division order that approved the construction of a senior-living facility in the Town of Castleton and struck several conditions imposed by the Town's Development Review Board (DRB). Neighbors argue that the court erred in concluding that: (1) it lacked jurisdiction to consider one of their arguments; (2) the project's memory-care unit was not a "nursing home" under the town's zoning bylaws; and (3) the project did not need a kitchen in each unit to be considered a "multi-family dwelling." We affirm the court's conclusion regarding the jurisdictional issue. We conclude, however, that the court applied an incorrect legal standard in evaluating the memory-care use and erred in looking to the "majority of the project" with respect to the requirement that residents "do their own cooking in the building." We thus reverse and remand the court's decision with respect to the memory-care use

to allow the court to consider, based on the evidence presented at trial, whether the memory-care component and its kitchen arrangement satisfies the ordinance.

¶ 2.    The record indicates the following.  Applicant sought permission from the DRB to build a 23,500-square-foot, four-story, ninety-nine-unit senior-living facility with associated parking.  The project included an independent-living facility, an assisted-living facility, and a memory-care unit.  The project was proposed as a Planned Unit Development (PUD) in the Town's Rural Residential 2 Acres (RR-2A) District.  The purpose of the RR-2A district is "to provide residential opportunities in the major portions of the community to the extent there are not substantial conflicts with natural resources."

¶ 3.    A PUD is a conditional use in the RR-2A district.  Allowed uses for a PUD include "single family, two family, and multiple-family dwelling units."  Applicant identified the project as a multiple-family dwelling unit.  This use is defined in the town's zoning bylaws as:

> A building or portion thereof used for occupancy by three (3) or more families living independently of each other, and doing their own cooking in the building, including but not limited to apartments, group houses, and row houses.  A fraternity and/or sorority house shall be considered a multiple family residence.

¶ 4.    Following a hearing, the DRB approved the application subject to conditions.  It found the proposal's independent-living and assisted-living units satisfied the multiple-family dwelling unit definition because these uses contemplated residents doing their own cooking in the building.  Residents in the memory-care unit would not do their own cooking, however, and the DRB therefore concluded that the memory-care unit did not qualify as a multiple-family dwelling unit.

¶ 5.    The DRB found the memory-care unit akin to a "nursing home" as defined in the bylaws, particularly given the level of medical need of those who qualified for these units.  The bylaws defined a "nursing or rest or convalescent home" as "[a] place, other than a hospital which maintains and operates facilities, for profit or otherwise, accommodating two or more persons unrelated to the home operator, who are suffering from illness, disease, injury or deformity and

2

require in house nursing care." A nursing home was considered a nonresidential use and required conditional-use approval in the RR-2A district. For a nursing-home use, the "maximum number of persons permitted on any one lot" was thirty. Because the proposed project exceeded this limit, the DRB did not approve the proposed nursing-home use. It approved the remaining aspects of the project with conditions, including that each residential unit be equipped with a kitchen.

¶ 6. Applicant appealed to the Environmental Division, which reviewed the matter de novo. In its statement of questions, applicant challenged the condition prohibiting it from including a memory-care unit as part of the project and the requirement that each residential unit have a kitchen. Neighbors did not appeal. The parties filed cross-motions for summary judgment. Applicant also moved to strike neighbors' challenge to the project's height as outside the court's jurisdiction. The court granted applicant's motion to strike neighbors' argument and denied both motions for summary judgment. It found a dispute of material fact regarding the level of "nursing care" that would be provided in the memory-care units.

¶ 7. Following a one-day trial, the court made findings on the record, which it later summarized in a written order. The court considered whether the proposed facility, as a whole, should be classified as a "multifamily dwelling unit" or a "nursing home." It found the bylaw definitions of these terms somewhat ambiguous and looked to state laws regulating "long-term care facilities," concluding that this provided a more clear and understandable definition of "nursing home." See 33 V.S.A. §§ 7101-7217. State law defines a "[n]ursing home" in relevant part as "an institution or distinct part of an institution that is primarily engaged in providing to its residents any of the following: (A) skilled nursing care and related services for residents who require medical or nursing care." Id. § 7102(7).

¶ 8. The court concluded that the proposed facility was a multi-family dwelling and not a nursing home. It reasoned that a nursing home was a place that provided "skilled nursing care for those residents who require specialized medical attention." It was persuaded by testimony from a registered nurse that the proposed facility would not provide the level of skilled nursing

3

care that a licensed nursing home would provide. It found that the proposed facility was designed to provide various independent- and assisted-living residential units and support services and considered the facility more akin to a multifamily dwelling unit than a nursing home. The court considered the definition of "multifamily dwelling unit" satisfied because most units would have a full kitchen and/or kitchenettes. The court therefore granted applicant's request for a conditional use permit subject to the DRB's terms and conditions with the exception of the condition prohibiting the memory-care unit and requiring that each unit be equipped with a kitchen.[1] Neighbors appeal.

¶ 9.    We begin with neighbors' challenge to the scope of issues before the Environmental Division. As indicated above, neighbors attempted to challenge the height of the project in their cross-motion for summary judgment. The height limit for projects in the RR-2A district is thirty-eight feet and the DRB waived this requirement and limited the project's height to forty-eight feet. Applicant argued that the court lacked jurisdiction to consider neighbors' argument because neighbors did not appeal and applicant did not raise the issue in its statement of questions. The court granted applicant's request. It found that applicant's questions did not address the dimensional standards applicable to the project, and that the regulatory provisions applicant cited did not directly address any dimensional standards, including height, that might be applicable to the project.

¶ 10.    Neighbors argue on appeal that the appropriateness of the height waiver was properly before the court. In support of their assertion, neighbors cite the following question posed by applicant:

> Should the Project's hybrid use as a combined independent living, assisted living and memory care senior living facility specifically designed to provide a much-needed spectrum of living arrangements for residents as may be appropriate for them over time be deemed

---

[1]  We have addressed the arguments that neighbors raised on appeal and leave it to the trial court on remand to determine what additional legal issues remain preserved and to be resolved in determining if the memory-care use is an allowed use in the PUD.

4

an allowed use in a Planned Unit Development (Ordinance §§ 204(G), 417)?

¶ 11.    According to neighbors, the cited ordinances require that the project conform to zoning requirements, although the ordinance recognizes that some requirements may be waived. Neighbors contend that, through this question, applicant broadly asked if the project should "be deemed an allowed use," and that the project's height is a component of any such analysis.

¶ 12.    We review the court's jurisdictional decision de novo and find no error.  In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 15, 204 Vt. 301, 167 A.3d 312 ("The Environmental Division's determination of the scope of an appeal is a jurisdictional determination which this Court reviews de novo.").  "The Environmental Division is a court of limited jurisdiction."  In re DJK, LLC WW & WS Permit, 2024 VT 34, ¶ 25, __, Vt. __, 323 A.3d 911; 4 V.S.A. § 34 (identifying Environmental Division's jurisdiction).  Its review here was limited to the legal issues identified by applicant through its statement of questions.  See V.R.E.C.P. 5(f) (limiting legal issues that may be presented at trial to those raised in appellant's statement of questions, subject "to a motion to clarify or dismiss some or all of the questions"); see also 10 V.S.A. § 8504(h) (directing that, with respect to de novo hearings, legal issues to be addressed on appeal limited to "those issues which have been appealed").  An appellant's statement of questions "functions like a pleading to limit the issues that are to be heard on the appeal."  Atwood Planned Unit Dev., 2017 VT 16, ¶ 12 (quotation omitted).  An "appellant may not raise any question outside of the statement" and an appellee "does not have the right to respond to the statement of questions."  Id. (recognizing that appellee's "only avenue . . . to clarify the statement of questions is to file a motion to clarify or dismiss some or all of the questions" (quotation omitted)).

¶ 13.    Applicant did not ask the court to review the height waiver granted to it by the DRB.  While it is true that the court can consider matters "intrinsic to a statement of questions" even if "the issue was not literally stated in the statement of questions," Atwood Planned Unit Dev., 2017 VT 16, ¶ 17, the DRB's waiver of the height requirement does not fall within this

5

category. The question at issue focused on the "use" of the project, not its height, and the citation to the ordinances governing PUDs does not suggest otherwise. A general statement in the ordinances that "[a]ll zoning requirements for the district shall be met" (with some provision for waivers) does not suffice to draw every aspect of the project into question. Indeed, it would make little sense for applicant to seek review of the height waiver, which it requested and obtained below. Had neighbors sought review of this issue, they could have appealed and filed their own statement of questions, but they did not do so. The Environmental Division did not err in rejecting neighbors' challenge to the building's height as outside the scope of its jurisdiction.

¶ 14. Neighbors next challenge the court's conclusion that the project met the requirement that limited PUD uses to "single family, two family and multiple family dwelling units." They assert that the memory-care unit is a "nursing home" under the plain language of the zoning bylaws and that the court erred by looking to a state law definition of this term. Neighbors also argue that the court improperly excluded relevant evidence regarding the level of care to be provided at the facility and erred in rejecting their argument that the project had been "materially revised" and needed to be remanded to the DRB.[2]

---

[2] In support of their arguments, neighbors argue that we should defer to the DRB's interpretation of the "nursing home" provision in the zoning bylaw. As set forth above, the DRB determined in its amended decision that the memory-care unit was not a "multiple-family dwelling unit" because residents would not be doing their own cooking in the building. Instead, the DRB deemed this use "akin to a nursing home as defined in the Bylaws, particularly given the level of medical need of persons qualified for the care provided in those units." It did not make any more specific determinations regarding the residents' need for in-house nursing care. We note that the Town took a position at odds with the DRB's decision before the Environmental Division—it agreed that applicant was entitled to summary judgment in its favor with respect to the removal of the conditions imposed by the DRB.

We have stated that "[w]hile we accord no deference to the Environmental Division's interpretations of local zoning ordinances, we continue to defer to a municipality's interpretation of its own ordinance if it is reasonable and has been applied consistently." In re Burton Corp. Conditional Use/Act 250, 2024 VT 40, ¶ 18, __, Vt. __, 325 A.3d 59 (quotation omitted). We rely here on the plain language of the bylaw and thus need not consider if deference to the DRB's decision is warranted.

6

¶ 15.    At issue here is a conditional-use approval for a PUD, which itself allows only specified uses.  We consider this a "hybrid-use" project based on its component uses, as did the DRB.  We review the Environmental Division's interpretation of the Town's zoning bylaws de novo.  In re JSCL, LLC CU Permit, 2021 VT 22, ¶ 16, 214 Vt. 359, 253 A.3d 429.  We agree with neighbors that the bylaw's definition of "nursing home" is plain and that the court therefore erred in looking to the definition of "nursing home" in state laws governing long-term care facilities.  Because the court did not apply the plain language of the bylaw, we reverse its decision as to the use involving memory-care units and remand for additional proceedings.

¶ 16.    "We review zoning ordinances according to the general rules of statutory construction."  In re 232511 Invs., Ltd., 2006 VT 27, ¶ 7, 179 Vt. 409, 898 A.2d 109.  "Our goal in interpreting a zoning ordinance is to give effect to the legislative intent."  In re Confluence Behav. Health LLC, 2017 VT 112, ¶ 20, 206 Vt. 302, 180 A.3d 867.  As with statutes, "we construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance."  In re Snyder Group, Inc., 2020 VT 15, ¶ 15, 212 Vt. 168, 233 A.3d 1077 (quotation omitted).  "[W]here no definition of a word is given in an ordinance, it must be given its commonly accepted use."  City of Rutland v. Keiffer, 124 Vt. 357, 360, 205 A.2d 400, 402 (1964).  "[I]f the meaning of an ordinance is plain, it will be enforced according to its terms, without resort to ancillary rules of construction."  MBL Assocs. v. City of S. Burlington, 172 Vt. 297, 300, 776 A.2d 432, 435 (2001).

¶ 17.    As set forth above, the bylaws define "nursing home" as:

> A place, other than a hospital which maintains and operates facilities, for profit or otherwise, accommodating two or more persons unrelated to the home operator, who are suffering from illness, disease, injury or deformity and require in house nursing care.

¶ 18.    This definition is plain, even if it is true, as the Environmental Division observed, that the state laws governing the licensing of long-term care facilities provides "more detail, more depth, and more clarity" than the zoning bylaw and even if the language in the zoning law might

7

now be considered outdated, as applicant suggested below. The zoning law is the controlling provision here and absent ambiguity, it is inappropriate to look to other sources in interpreting the intent of the provision. In re Stowe Club Highlands, 164 Vt. 272, 280, 668 A.2d 1271, 1277 (1995). The bylaw does not define a nursing home as a place providing "skilled nursing care for those residents who require specialized medical attention," as the court found. Instead, it requires, as relevant here, two or more people suffering from illness or disease who "require in house nursing care."

¶ 19. Much of the testimony at trial focused on what type of license applicant would be seeking from the state to operate its facility and what level of care would be provided consistent with such license. Applicant made clear that it was not seeking a state license to operate a "nursing home" or "residential care home," as those terms are defined in state law, but instead would pursue a license to operate an "assisted living residence." 33 V.S.A. § 7102(1), (7), (10). Applicant's witnesses described the level of nursing care that would be provided in the assisted-living and memory-care units. One witness testified that the memory-care units would have "basically the same type of care" as the assisted-living units, "only maybe a little higher acuity" and the residents would live in a secured unit for their safety. This witness testified that applicant would "not provide skilled nursing services whatsoever in assisted living"; she described "skilled nursing services" as a "higher acuity" and higher level of care, likely "around-the-clock care." She contrasted this with assisted living, which involved residents with more chronic and stable health conditions.

¶ 20. Because the court applied a different standard, it did not make findings tailored to the language of the bylaw. While it appears clear that residents of a memory-care unit are suffering from an illness or a disease, it is for the factfinder to determine in the first instance if these individuals consequently "require in house nursing care." In addition, when opining on the level of nursing care to be provided in the proposed assisted-living facility and memory-care units, applicant's witnesses focused on the levels of care associated with state licensed nursing homes

8

and assisted living facilities, rather than the language of the bylaw. We therefore reverse and remand for additional findings under the applicable standard as to whether the use of the property for memory-care units falls within the definition of a "nursing home" use.

¶ 21. In reaching our conclusion, we reject neighbors' arguments regarding the Environmental Division's evidentiary rulings and its denial of their request to remand the application to the DRB. As neighbors recognize, the court's decision whether to admit evidence is "highly discretionary" and will stand absent a showing that the court's discretion was "abused or withheld and prejudice has resulted." Griffis v. Cedar Hill Health Care Corp., 2008 VT 125, ¶ 18, 185 Vt. 74, 967 A.2d 1141. Neighbors argued at trial that applicant had previously indicated that it would seek a license as a "residential care home" and they focused on the type of license applicant might seek and the level of care provided at other licensed facilities operated by applicant in different locations. They also sought to introduce a "variance" form, pursuant to which—for state licensing purposes—licensed facilities could provide a higher level of care to an individual patient than allowed under the regulations pertaining to that type of license.

¶ 22. The court found this information largely irrelevant to the issues before it, namely, whether it should grant a conditional-use permit to the project as proposed. As indicated previously, applicant explained that it was not seeking a state license to operate a residential-care home or a nursing home but would be seeking a license to operate an assisted-living facility. It sought review of the project as proposed and explained that if there was a change of use in the future, it would need to seek an amendment to its zoning permit. With respect to variances under state law, applicant's witness explained that a variance would allow "a resident to remain in the assisted living residence, provided certain conditions [were] met, if their care exceeds what's provided or allowed under the [state] regulations." Neighbors sought to introduce a copy of the variance form itself. The witness read the form silently at trial and reiterated his testimony that a variance could allow a resident to remain in a facility even if their needs exceeded the type of care provided under a state license for a particular type of facility.

9

¶ 23. Applicant objected to the admission of the level-of-care variance form on relevancy grounds. It questioned whether a variance process relating to future operations would be of any help to the court in determining if the proposed use for the property fell within the definition of "nursing home" under the zoning ordinance. Neighbors argued that it was "directly related to assisted living facilities and what type of nursing care c[ould] be provided," which they argued was "directly relevant to the definition of nursing, rest, or convalescent home in the zoning ordinance." The court rejected neighbors' request to admit a copy of the level-of-care variance form, concluding that there was not sufficient foundational evidence to show that the exhibit was relevant to the application pending before the court. It rejected as irrelevant discussions about levels of care at other facilities run by applicant. The court acted within its discretion in so concluding. Applicant had not yet applied for a state permit, but it maintained throughout the court proceedings that it would be seeking a license as an assisted living facility. The court did not err in considering prospective license and variance requests, and information about different facilities, to be of limited value in addressing the town bylaw question before the court.

¶ 24. Applicant's assertion about a significant change in the plan is also without merit. Applicant argued at trial that the project plans submitted into evidence were dated June 2022 and they were the same final plans submitted to the DRB for its consideration. Neighbors correctly point out that in a motion for reconsideration filed with the DRB, applicant indicated that it would be seeking approval for a "residential care home." The Environmental Division reviewed the application de novo, however, and in the de novo proceeding, applicant indicated that it would be seeking a license as an assisted-living facility; as indicated, its plans remained the same as those submitted to the DRB. The court declined neighbors' request to remand to the DRB. The court has discretion in deciding if a remand is required, In re Wright & Boester Conditional Use Application, 2021 VT 80, ¶ 22, 215 Vt. 593, 267 A.3d 659, and no abuse of discretion is shown here. The court reasonably concluded, based on the record before it, that applicant did not identify a "truly substantive change" to its application for conditional-use approval that would require the

10

DRB to reexamine the application.  Id. (drawing distinction "between truly substantial changes to the form or type of an application, which necessitate remand, and proposed revisions which do not materially change the pending application or type of permit requested, which do not" (quotations omitted)).

¶ 25.    Finally, neighbors argue that the court erred in striking the condition requiring that "each residential unit . . . be equipped with a kitchen."  They maintain that the court's conclusion is inconsistent with the bylaw's definition of a "multi-family dwelling unit."  Neighbors appear to argue that all units must contain "full kitchens" to satisfy the definition and that communal eating spaces are inconsistent with a "multi-family dwelling unit."

¶ 26.    The Environmental Division concluded that the project as a whole constituted a "multi-family dwelling unit" because "[t]he majority of units will contain full kitchens and/or kitchenettes."  That conclusion is inconsistent with the plain language of the bylaw.

¶ 27.    A mult-family dwelling unit is defined as:

> A building or portion thereof used for occupancy by three (3) or more families living independently of each other, and doing their own cooking in the building, including but not limited to apartments, group houses, and row houses.  A fraternity and/or sorority house shall be considered a multiple family residence.

The assisted-living portion of the project as proposed plainly allows individuals to "do[] their own cooking in the building," whether in their room via a microwave or in a shared kitchen, not unlike a fraternity or sorority provided as an example in the bylaw.  The court thus did not err in striking the kitchen condition from the application with respect to the assisted-living units and independent-living units. [3]  The court did not specifically consider whether the cooking requirement of the bylaw was satisfied with respect to the memory-care units.  In determining the nature of the memory-care

---

[3]  While neighbors again urge deference to the DRB's decision on this point, the DRB did not find the assisted-living units must all have a "full kitchen" to be a multi-family dwelling unit. To the contrary, it found that the "independent living and assisted living aspects of the proposed use" satisfied the kitchen aspect of the definition "because those uses contemplate that the residents will do their own cooking in the building."  This is the requirement set forth in the bylaw.

use on remand, and evaluating whether the use constitutes a nursing home or a multi-family dwelling, the court should consider if the memory-care component and its kitchen arrangements satisfies the ordinance.

Affirmed in part, and reversed and remanded in part for additional findings.

FOR THE COURT:

_____

Associate Justice

¶ 28. **WAPLES, J., concurring.** I agree with the majority's analysis. However, I write separately to clarify the appropriate scope of remand. "It is axiomatic that on remand the trial court is constrained to follow our specific directions as interpreted in light of the opinion." State v. Higgins, 156 Vt. 192, 193, 588 A.2d 1062, 1062 (1991) (quotation omitted). The majority explains that this matter is to be remanded to the Environmental Division for "additional findings under the applicable standard as to whether the use of the property for memory-care units falls within the definition of a 'nursing home' use," as defined in the zoning ordinance. See ante, ¶ 20.

¶ 29. One of applicant's questions for the Environmental Division asked whether "discriminatory treatment of the Project under the Ordinance due to the identity and conditions of its residents [would] violate the federal Fair Housing Act." Neighbors moved for summary judgment on this question. Applicant opposed the motion and explained that its argument was that the ordinance treats a multi-family dwelling differently because "of the nature of the elderly residents requiring some degree of personal and other care to address their individual 'handicaps,' as that term is understood under the [Fair Housing Act]." The court denied neighbors' motion because of a dispute of fact over whether the project constituted a "nursing home" as defined by the ordinance. However, by the time of trial, the court looked not to the ordinance but to state statutes to decide whether the project was a nursing home. See ante, ¶ 20.

¶ 30. Because of the court's error, applicant did not present evidence regarding its Fair Housing Act question at trial and applicant was never heard on the question. Neighbors appeared to concede at oral argument that, were this Court to remand the case, the parties would need to present more evidence on the issue. See Oral Argument at 12:08, In re Dousevicz (Jan. 22, 2025) (24-AP-130), https://youtu.be/R83Y0xB28zE?t=729. This is not a situation where a party failed to raise an argument in the first instance and is then foreclosed from making that argument after remand. See Bissonnette v. Wylie, 168 Vt. 561, 562, 711 A.3d 1161, 1163 (1998) (mem.); Coty v. Ramsey Assocs., Inc., 154 Vt. 168, 170 n.3, 573 A.2d 694, 696 n.3 (1990).

¶ 31. Applicant's question bears directly on the enforceability of the "nursing home" provision of the ordinance, so I would allow the parties to present further evidence on that question upon remand.

¶ 32. I am authorized to state that Chief Justice Reiber joins this concurrence.

_____

Associate Justice

13