**In re Petition of Twenty-Four Vermont Utilities, Pursuant to 30 V.S.A. § 248, for a Certificate of Public Good Authorizing Execution and Performance of a Firm Power and Energy Contract with Hydro-Quebec and a Hydro-Quebec Participation Agreement (New England Coalition for Energy Efficiency and the Environment and the Grand Council of the Cree (Quebec), Appellants)**

[618 A.2d 1309]

No. 91-269

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Bryan, Supr. J., Specially Assigned

Opinion Filed November 25, 1992

*John H. Marshall* and *Holly Ernst Groschner* of *Downs Rachlin & Martin*, St. Johnsbury, for Petitioners-Appellees.

*Bonnie Barnes, William K. Sessions, III, James Allen Dumont*, and *Chris McAnany*, Law Clerk (On the Brief), of

*Sessions, Keiner, Dumont, Barnes & Everitt*, Middlebury, for Intervenors-Appellants.

*James Volz*, Director for Public Advocacy, and *Robert V. Simpson, Jr.* and *John L. Hodge*, Special Counsel, Montpelier, for Appellee Department of Public Service.

**Dooley, J.** Following the Public Service Board approval of the contract by twenty-four Vermont utilities to purchase electricity from Hydro-Quebec (HQ), the lead Vermont utilities agreed, subject to any necessary regulatory approval, to waive the right to collect damages in the event that HQ terminated the contract before December 1, 1991. The PSB concluded that the waiver and release required its approval, and after an expedited review, granted it. Some of the intervenors, the New England Coalition for Energy Efficiency and the Environment (NECEE), the Grand Council of the Cree (the Cree) and the National Audubon Society appeal the approval, arguing that the board erred in (1) refusing to reevaluate the merits of the overall purchase contract and admit evidence related to that reevaluation; (2) failing to give adequate notice of the hearings on the waiver and release; and (3) approving the waiver and release, which was not signed by all the Vermont utilities. We affirm.[1]

Many of the facts underlying this appeal are set forth in our decision of October 2, 1992, affirming the Board's approval of the overall purchase contract, *In re Twenty-Four Vermont Utilities*, 159 Vt. 339, 618 A.2d 1295 (1992) [hereinafter *Hydro-Quebec I*]. As discussed in that opinion, a license for the export of power pursuant to the underlying sale contract was required from the National Energy Board of Canada (NEB). See *id.* at 355, 618 A.2d at 1304–05. The license came in an NEB decision issued after the Vermont PSB had closed the evidence in its

---

[1] The utilities argue that this appeal is moot because, at the time of briefing, the parties to the waiver and release had agreed not to exercise rights under it. Moreover, the waiver and release has now expired and apparently has never been used. Thus, it is not clear what relief we could give; a reversal would strike an agreement that currently has no effect and was not used during its life. Given the inadequacy of the record, we are unable to draw a firm conclusion on mootness and the scope of the contract being reviewed. We exercise our discretion to decide the merits of this appeal.

review of the purchase contract, but the license was conditioned on Canadian environmental review of any facilities required to supply the power to the Vermont utilities under the contract. In order to ensure that circumstances had not changed because of the NEB decision, the Board requested the utilities to file an affidavit from an HQ official stating, in part, that the damage and compensation provisions of the contract were applicable if the NEB export license was voided because of HQ's failure to obtain needed environmental approvals. The utilities filed the affidavit, and the Board relied upon it in refusing to reopen the evidence to consider the NEB decision. We affirmed that ruling. See *id.* at 357, 618 A.2d at 1306.

On April 3, 1991, while the underlying case was on appeal in this Court, the utilities and HQ proposed an amendment to the purchase contract. The critical provision of the amendment extended by one year, from April 30, 1991 to April 30, 1992, the date by which a party could terminate the contract without penalty or payment of damages if regulatory approvals were "withheld or tendered upon terms unsatisfactory to it." The amendment was negotiated at the insistence of HQ, and the utilities indicated that HQ was likely to terminate the contract by April 30th if the amendment did not extend the date for HQ to act. At a hearing on April 17th, the Board concluded that the amendment required its approval because it affected the value of the overall purchase contract, but that it could not review the amendment as long as the case was pending in this Court. It sought a remand from this Court to consider the amendment. The intervenors opposed the remand, and added that they had new evidence relating to the Board's approval decision and would seek a general reopening of the case.

At that point, the parties to the contract changed their approach, apparently in the hope of avoiding a remand. They withdrew the contract amendment and negotiated a waiver and release which provided:

> [I]f one of the parties exercises such termination right between April 30th, 1991 and December 1st, 1991, the other party will waive any right to claim the payment of all costs, damages and expenses specified under Article 1.4 of the said Contract and will release the obligation for such payment.

The Board persisted in its request for a remand, and on the morning of April 26th, a Friday, this Court granted a remand until May 1, 1991 "for the limited purpose of considering the effect of the waiver and release and issues related thereto." The Board had oral argument that afternoon (the 26th) on the effect of the waiver and release and took testimony on the following Monday. The next day, April 30th, it issued its decision approving the waiver and release. The Board analyzed the waiver and release under each of the criteria in 30 V.S.A. § 248 and concluded that it would not change its earlier findings and conclusions with respect to each of these criteria.

Intervenors' first argument is that the Board erred in refusing to allow evidence that showed that the overall contract does not meet the requirements of § 248, contrary to the Board's decision of October 12, 1990 and its post-judgment decision of January 7, 1991. Specifically, intervenors argue that the Board refused to consider evidence that demand-side management (DSM) could have a greater impact than the Board found, that HQ would cancel irrespective of the waiver and release because of political tensions and legal battles in Canada, that the Board's findings on the ability to sell excess HQ power and the cost of alternatives to HQ proved to be wrong, and that the HQ contract would cause environmental damage. In reviewing this and other arguments of the intervenors, we shall assume that the Board was correct that it was required to review the waiver and release under § 248, although that conclusion is vigorously contested by the utilities.

For three reasons, we find intervenors' claim to lack merit. First, intervenors ground their claim on case law which holds that it is error for the Board to refuse to admit relevant evidence in support of a party's theory of its case. See *In re Central Vermont Public Service Corp.*, 141 Vt. 284, 292–93, 449 A.2d 904, 909 (1982). In fact, the Board admitted the evidence in issue, but did not accept it as a basis for its decision. There was no violation of the rule in *CVPS*.

Further, the scope of the remand from this Court was very narrow, and the Board was bound by the remand instructions. See *Coty v. Ramsey Associates*, 154 Vt. 168, 171, 573 A.2d 694, 696 (1990). The remand allowed the Board to consider the effect

of the waiver and release and issues related thereto. It did not encompass a general reopening of the contract approval.

The final reason is related to the second. Intervenors characterize the utilities' filing for approval of their waiver as a motion to amend a judgment governed by V.R.C.P. 60(b), as adopted by Rule 2.221 of the Board. See *Hydro-Quebec I*, 159 Vt. at 356, 618 A.2d at 1305–06 (Vermont Rules of Civil Procedure apply to Board cases absent a specific rule to the contrary). This is not a proper characterization of the proceedings. Section 248 of Title 30 requires the Board, in certain circumstances, to review a purchase agreement for electric capacity or energy from outside the state. The Board's earlier findings and conclusions on the underlying sale contract had utilized the § 248 criteria. Upon receiving the utilities' waiver filing, the Board decided that the waiver and release was a significant modification of the purchase agreement and could alter its previous conclusions, drawn under the § 248 standards, regarding the contract. Thus, the Board reviewed the incremental effect of the waiver and release on its earlier conclusions. Nothing in that process required the Board to amend its prior approval, which was based on the pre-modification contract, or to reopen the evidence related to the prior approval. Assuming it was allowed by the remand order from this Court, such a reopening would be discretionary. See *id.* at 356, 618 A.2d at 1305. There was no abuse of discretion in failing to do so here.

■ Intervenors' second claim is that the hearings in this case were held without allowing the statutory notice period set forth in 30 V.S.A. § 10(b) and, alternatively, without reasonable notice as required by 3 V.S.A. § 809 and 30 V.S.A. § 10(d). The main statute on which intervenors rely requires the Board to give twelve-day notice of all hearings unless certain exceptions apply. See 30 V.S.A. § 10(b). It is undisputed that notice for neither the April 26th nor the April 29th hearings complied, as it was given on April 26th. The Board found, however, that an exception applied. That exception provides that an "evidentiary hearing, once commenced upon proper notice, may be continued to a subsequent date upon any reasonable notice." *Id.* § 10(d). In the Board's view, the April 26th and 29th hearings were continuations of an April 17th hearing, the April 17th hearing was properly noticed, evidence was taken at the April

17th hearing, and there was "reasonable notice" of the April 26th and 29th hearings.

Intervenors take issue with the Board's analysis in two respects. They argue that the April 17th hearing is irrelevant because it concerned the contract amendment; the later hearings were about the waiver and release. We find this argument to be overly technical. The contract amendment and the waiver and release accomplished similar purposes, and the latter was narrower and less complex. If intervenors had adequate notice of the amendment, they could not be prejudiced by the substitution of the scaled-down version in the waiver and release. For purposes of the notice requirements, we agree that the waiver and release was a modification of the amendment, and a new twelve-day notice period was not required by § 10(b).

■■ Next, intervenors argue that the notice of the April 26th and 29th hearings was not reasonable. In looking at the adequacy of the notice, we must examine "whether or not the parties were given an adequate opportunity to prepare and respond to the issues raised in the proceeding." *In re Green Mountain Power Corp.*, 131 Vt. 284, 293, 305 A.2d 571, 577 (1973). The notice met that test in the unique circumstances that were present. Intervenors were aware that the Board had to act by April 30th and intended to proceed with evidence as soon as this Court ruled on the remand request. They were fully aware of the issues and offered expert testimony on them. They have made no claim that they would have had further evidence if there had been a longer notice period. We find no violation of the reasonable notice requirements of 3 V.S.A. § 809(a) or 30 V.S.A. § 10(d).

■ We also must consider the special case of the National Audubon Society, which was not notified of the April 26th hearing and received notice of the April 29th hearing only on that day. When the utilities gave notice of the contract amendment, the Board opened a separate docket and notified all persons and entities involved in the contract approval proceeding of the proposal and stated that those wishing to intervene were to file a motion prior to, and attend, the prehearing conference. National Audubon Society failed to file an intervention motion or attend the prehearing conference. Thus, it was not formally a

party in this proceeding. Despite its inaction, it was sent a copy of the Board's ruling that the amendment required approval and its request for remand. It was also sent notice that the utilities withdrew the contract amendment and substituted the waiver and release. It had ample opportunity to protect its interest and failed to do so. There was no error in failing to notify it of the April 26th hearing and in notifying it of the April 29th hearing on that day.

■ Intervenors' final claim is that the waiver and release was not ripe for review because it had not been signed by all the requisite utilities.[2] They contend that because of the lack of signatures, the utilities sought merely an advisory opinion, which the Board lacked jurisdiction to give. The utilities counter that the purchasers of a majority of the power signed the waiver and release, the rest were legally obligated to sign, and there was evidence that the rest would sign. These arguments point out the difficulty in determining standing in cases like this. Under the circumstances listed in 30 V.S.A. § 248(a), the utilities may not "in any way" purchase electric capacity or energy from HQ without approval of the Board. Thus, by necessity no binding contract can exist when the Board initiates its own review. This does not render the Board's opinions advisory.

This is not a case where the Legislature has specified the necessary interests that will confer standing to seek administrative action. See *Town of Sandgate v. Colehamer*, 156 Vt. 77, 82, 589 A.2d 1205, 1208 (1990); *Mad River Valley Enterprises, Inc. v. Town of Warren Board of Adjustment*, 146 Vt. 126, 128, 499 A.2d 759, 760 (1985). Nor is this a case where the regulatory agency is asserting jurisdiction over the objection of the regulated enterprise. See *In re Vermont Gas Systems, Inc.*, 150 Vt.

---

[2] The utilities have pointed particularly to this claim as moot because they assert that all participating utilities signed the waiver and release. We cannot determine this from the record before us. Moreover, intervenors argue that the Board lacked jurisdiction to consider the waiver and release, and at least arguably, jurisdiction can not be resurrected by the later signatures. For these reasons, we reach part of the merits of this claim. We do not consider it necessary to decide whether the utilities who had signed the waiver and release could bind the rest.

34, 39, 549 A.2d 627, 630 (1988). Our treatment of such cases, however, is instructive. In *Vermont Gas Systems*, we held there was no jurisdiction under Act 250 where the landowner "had no specific plans establishing the precise location, the method of construction, or the extent of the work to be done." *Id.* at 38, 549 A.2d at 629. In *Mad River Valley Enterprises*, a zoning case, a potential developer's "common goal" or "shared interest" with the landowner was deemed insufficient for standing where the developer had no interest in the land involved. 146 Vt. at 129, 499 A.2d at 761.

The circumstances here were adequate for the Board to find standing. Where the regulated enterprise—here, the utilities—seeks regulatory approval, the risk that the agency is being asked for an advisory opinion is minimal because the results of the proceeding are of little value to the regulated enterprise unless it goes through with its proposal exactly as presented to the agency. In this case, there were representations that all utilities would agree, and no one disputed that the waiver and release was likely to be the only way to save the entire multi-billion dollar contract. The short time periods involved made it understandable why the waiver and release had not been signed by all the utilities. The interests of the utilities were more concrete and immediate than those involved in the cases where we have found no jurisdiction. The Board did not err in reviewing the waiver and release.

*Affirmed.*