2007 VT 17

## Lois HAVILL v. WOODSTOCK SOAPSTONE COMPANY

[924 A.2d 6]

No. 05-292

¶ 1. March 1, 2007. Plaintiff Lois Havill and defendant Woodstock Soapstone Company separately appeal from the trial court's order on remand recalculating the damage award in this wrongful

termination action. For the reasons set forth below, we affirm.

¶ 2. This is the third appeal in this matter to come before the Court. In the first, *Havill v. Woodstock Soapstone Co.*, 172 Vt. 625, 783 A.2d 423 (2001) (mem.) ("*Havill I*"), we reversed a summary judgment in favor of defendant/employer Woodstock Soapstone Company, holding that genuine issues of material fact existed as to whether defendant's personnel policies modified the at-will employment relationship and, if so, whether plaintiff's employment with the company was properly terminated. Following a bench trial on remand, the trial court concluded that defendant's personnel policies created an implied contract requiring just cause and progressive disciplinary procedures as conditions of termination, and that defendant breached the contract when it terminated plaintiff without warning and on the pretext that it had eliminated her job functions. The court awarded plaintiff a total of $74,644 in principal damages for a seven-year period, consisting of five years back pay from 1998 to the date of judgment, and two years front pay for lost future wages from the date of judgment to the end of 2004 — the year in which plaintiff reached the normal retirement age of sixty-five — plus $15,040 in prejudgment interest.

¶ 3. We affirmed the trial court's finding of liability in *Havill v. Woodstock Soapstone Co.*, 2004 VT 73, 177 Vt. 297, 865 A.2d 335 ("*Havill II*"), but remanded for a recalculation of damages in four respects. First, with respect to the two-year front-pay award we directed the trial court to reassess the evidence in light of both defendant's claim that plaintiff would not have remained in its employ until the normal retirement age of sixty-five, and plaintiff's assertion that the two-year period was inadequate in view of her alleged intention to work beyond the age of sixty-five. *Id.* ¶¶ 31-35. We further directed the trial court to: (1)

deduct a certain category of plaintiff's post-termination income which the court had erroneously overlooked, *id.* ¶ 39; (2) make additional findings as to whether plaintiff was entitled to augment her base pay by including paid vacation time, *id.* ¶ 42; and (3) consider the appropriate treatment of income that plaintiff had received as compensation while working for her husband's business, *id.* ¶ 46.

¶ 4. Following our remand, the trial court held a hearing and issued a written decision in June 2005. In its decision, the court explained that, although it was determined to "focus on the remand issues, and not relitigate the case based on new evidence," it had permitted the parties to place certain new evidence and issues on the record "in deference" to their request. With respect to the principal issue of front-pay damages, the court observed that the question involved the difficult task of "predicting future events and behavior." The court then reviewed the parties' conflicting claims and evidence, noting plaintiff's testimony that she had informed defendant of her intention to remain on the job for another ten years, as well as the various proofs adduced by defendant purporting to show that plaintiff would have been terminated for performance deficiencies before she reached retirement age, and found both to be unpersuasive. The court concluded, rather, that balancing plaintiff's age, employment history, and dedication to the company against defendant's growing disenchantment with her work it was "more likely than not that [p]laintiff would have sincerely tried to conform her job performance to expectations with moderate success and been able to remain at the company until the normal retirement age of [sixty-five], but probably not beyond." Accordingly, the court awarded plaintiff front-pay damages up to November 13, 2004, the date she turned sixty-five.

¶ 5. Both parties dispute the court's ruling on appeal. Our review of the ruling, however, is limited. Factual findings of the trial court will not be disturbed unless they are clearly erroneous. *Mizzi v. Mizzi*, 2005 VT 120, ¶ 7, 179 Vt. 555, 889 A.2d 753 (mem.). We evaluate the findings in the light most favorable to the judgment, and will not set them aside "merely because they are contradicted by substantial evidence; rather, an appellant must show that there is no credible evidence to support them." *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 454, 752 A.2d 26, 30 (2000). Moreover, "[g]iven [the trial court's] unique position to assess the credibility of witnesses and weigh the evidence," its findings must be upheld if reasonably supported by the evidence, and its conclusions if supported by the findings. *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998).

¶ 6. Furthermore, as we observed in *Havill II*, the trial court must be afforded "considerable discretion in calculating awards for lost future income, because [they] are 'inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty.'" 2004 VT 73, ¶ 35 (quoting *Williams v. Rubicon, Inc.*, 808 So. 2d 852, 862 (La. Ct. App. 2002)); see also *Mathieu v. Gopher News Co.*, 273 F.3d 769, 782 (8th Cir. 2001) (observing that front-pay awards are "inherently speculative" and are necessarily "based on probabilities rather than actualities"); *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 433 (Tenn. Ct. App. 1992) (given the "uncertainties surrounding an employee's future at his or her job and the employee's prospective earnings in alternative employment" the calculation of front pay is "generally the product of intelligent guess-work"). See generally P. Janovsky, Note, *Front Pay: A Necessary Alternative to Reinstatement Under the Age Discrimination in Employment Act*, 53 Fordham L. Rev. 579, 603 (1984) (noting the "two areas of speculation inherent in the determination of a front pay award: the plaintiff's future had he remained at his old job and his probable earnings in alternative employment").

¶ 7. Assessed in light of these standards, the trial court's front-pay award comfortably withstands review. Although defendant purports to raise four grounds of dispute, all essentially rely on the assertion that the trial court erroneously dismissed or ignored substantial evidence — old and new — that plaintiff would have been terminated before the normal retirement age because of her deficient job performance, particularly her reluctance to perform the critical task of answering the telephone at work. In a related vein, defendant claims that the evidence fails to support the court's finding that plaintiff would have endeavored to conform her job performance to expectations "with moderate success," allowing her to remain at work until retirement age. As discussed earlier, however, the court's decision discloses that it carefully considered the evidence adduced by defendant both at trial and on remand to support its claim that plaintiff would have been terminated before retirement age for inadequate performance and found it to be "unconvincing."* More persuasive, in the court's view, was evidence of the solicitude that the company had shown plaintiff because of her longevity and dedication, and specific testimony that plaintiff's reluctance to an-

---

* Although the court indicated that it was not inclined to "relitigate the case based on new evidence," there is no support for defendant's claim that the court ignored the evidence introduced at the remand hearing concerning plaintiff's job performance. The court merely indicated that it found the evidence to be "a repetition" of points made at the original trial.

swer the company phone was not the reason for the company's decision to eliminate her position. The court acted well within its discretion in weighing these conflicting proofs, evaluating the credibility of the various witnesses, and ultimately determining that they supported a finding that plaintiff would have remained employed to retirement age.

¶ 8. Nor are we persuaded by defendant's claim that there was no specific evidence to support the court's decision to award front-pay damages to the exact date that plaintiff turned sixty-five. As noted, the somewhat speculative nature of front-pay damages renders it "insusceptible of being calculated with mathematical certainty." *Havill II*, 2004 VT 73, ¶ 35 (citation omitted). A reasonable estimate based on the evidence is all that the law requires, and that is precisely what the court's finding accomplished here in balancing the conflicting evidence and claims of the parties. We thus find no basis to disturb the court's findings concerning the front-pay award.

¶ 9. Defendant raises several additional claims that require no extended discussion. In addition to the recalculation of front pay, we directed the trial court in *Havill II*, 2004 VT 73, ¶ 47, to "consider the appropriate treatment" of income amounting to approximately $2600 per year that plaintiff had earned in her husband's business since 2001, and to adjust the damage award accordingly. The court addressed this issue as directed, and deducted the earned income from the final damage award. Defendant complains, nevertheless, that the court abused its discretion in failing to consider new evidence showing that plaintiff had earned income from her husband's business as early as 2000. We discern no error. As noted, we remanded the case with directions to the trial court to make "further findings" on this and other damage issues. We did not direct or require the trial court to admit or consider new

evidence, and we find no abuse of discretion in the court's decision to rely on the original-record evidence on this point. See *R.E. Bean Constr. Co. v. Middlebury Assocs.*, 142 Vt. 1, 6-7, 451 A.2d 1096, 1099-1100 (1982) (court did not abuse its discretion in declining to hold full evidentiary hearing on remand where this Court's mandate did not require it to do so).

¶ 10. Defendant's remaining two claims relate to the issue of prejudgment interest. Defendant argues that the award was improper because: (1) front-pay damages are inherently speculative and therefore not sufficiently capable of ready ascertainment to be awarded under V.R.C.P. 54(a); and (2) even if available, the prejudgment-interest award should have been calculated under New Hampshire law. Defendant failed to raise either claim on appeal in *Havill II*, however, and the issues were therefore waived. *In re Hart*, 167 Vt. 630, 631, 715 A.2d 640, 641 (1998) (mem.) (issues not raised on appeal are waived for purposes of later review). Our remand in *Havill II* does not alter this conclusion; the remand order was limited to the issues set forth in the mandate, and did not operate to reopen the case to reargument generally or to authorize the trial court to consider issues beyond the scope of our remand. See *State v. Gibney*, 2005 VT 3, ¶ 6, 177 Vt. 633, 869 A.2d 118 (mem.) (where this Court remanded with directions for the trial court to consider one issue at resentencing hearing, defendant could not raise others, and thus the "court correctly refused to consider arguments defendant waived in his original appeal and that were not specified in the remand"); *In re Twenty-Four Vt. Utils.*, 159 Vt. 363, 368, 618 A.2d 1309, 1312 (1992) (board was limited on remand to consideration of issues enumerated in this Court's remand order, which did "not encompass a general reopening" of other issues); *Bissonnette v. Wylie*, 168

Vt. 561, 562, 711 A.2d 1161, 1163 (1998) (mem.) (in proceedings on remand, trial court is limited to the specific directions in the remand order as interpreted in light of the opinion). Although defendant argues against application of the law-of-the case doctrine because prejudgment interest was not raised or decided in the earlier appeal, we do not rely on that doctrine here, but rather on the principle that appeals may not be prosecuted in a piecemeal fashion, so that claims which are not raised in the initial appeal may not be brought on remand. See *Beaupre v. Green Mountain Power Corp.*, 168 Vt. 596, 597, 715 A.2d 1292, 1293 (1998) (mem.) (explaining that "[t]his Court has long adhered to a policy of avoiding piecemeal appeals").

¶ 11. Turning from defendant's claims on appeal to plaintiff's, we note that plaintiff has raised only one issue, to wit, that the court erred by adhering — for mitigation purposes — to plaintiff's original estimate at trial of her total anticipated future earnings from Quest Investigations and Therapeutic Dimensions rather than deducting the lower amounts she claimed to have actually earned at the remand hearing. As we have explained, however, our order on remand was limited to four specific issues, and this was not among them. Our order did not direct the trial court to reopen the damages issue for general relitigation or require it to admit new evidence. Accordingly, the court properly declined to reconsider the amounts that plaintiff earned in these alternative employments.

*Affirmed.*