## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 112-10-18 Vtec |

| | |
|---|---|
| Hinesburg Hannaford SP Application | DECISION ON MOTION |

Martin's Foods of South Burlington, LLC, (Hannaford) seeks site plan approval for the construction of a 36,000-square-foot Hannaford grocery store (the Project) on Lot 15 of the Commerce Park subdivision in Hinesburg, Vermont. The Town of Hinesburg Development Review Board (DRB) denied the application in an October 17, 2018 decision. Hannaford timely appealed the denial to this Court. A group of Hinesburg residents (Neighbors) cross-appealed. The Town of Hinesburg (Town) also cross-appealed.[1] Presently before the Court is Hannaford's motion to dismiss a number of the questions in Neighbors' Statement of Questions.

Hannaford first applied for site plan approval for the Project in 2010. The DRB approved Hannaford's original site plan with conditions in 2012. This Court heard the appeal of that decision and also approved the original site plan, albeit with modified conditions. See In re Hinesburg Hannaford SP Approval, No. 163-11-12 Vtec (Vt. Super. Ct. Envtl. Div. Apr. 12, 2016) (Walsh, J.). On appeal, the Vermont Supreme Court denied Hannaford's previous site plan application (the 2017 Supreme Court Decision) because the Project as proposed violated a 75-foot setback in the 1987 subdivision plat for Commerce Park.[2] See In re Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶¶ 14-22. Hannaford then returned to the DRB with the present site plan application, which it revised to incorporate the new, reduced setbacks it proposes in a separate subdivision amendment application.[3]

---

[1] This Court upheld the Town's cross-appellant status in a February 11, 2019 Entry Order in the face of Neighbors' challenge to the Town's participation in the DRB hearings, as required for standing pursuant to 24 V.S.A. § 4471(a) and 10 V.S.A. § 8504(b).

[2] Also on appeal before the Supreme Court was Hannaford's Act 250 application, which this Court had approved with conditions. See In re Hinesburg Hannaford Act 250 Permit, No. 113-8-14 Vtec (Vt. Super. Ct. Envtl. Div. July 7, 2016) (Walsh, J.). The 2017 Supreme Court Decision remanded the Act 250 matter back to this Court for further development of evidence concerning traffic issues and the ability of an east-west swale to control stormwater. See Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶¶ 11, 85.

[3] Hannaford's proposal to revise the setbacks of the 1987 subdivision plat is the subject of another appeal that is also currently before this Court. See Hinesburg Hannaford SD, No. 114-11-18 Vtec.

**Legal Standard**

An appellant's Statement of Questions limits the issues on appeal before this Court. V.R.E.C.P. 5(f); In re Garen, 174 Vt. 151, 156 (2002). No response is permitted to the Statement of Questions. V.R.E.C.P. 5(f). Parties who disagree with the Statement, however, may file a motion to dismiss or clarify some or all of the questions. Id. In reviewing such a motion, this Court applies the standards for motions to dismiss set out in V.R.C.P. 12. See V.R.E.C.P. 5(a)(2) (binding this Court to the V.R.C.P. when the V.R.E.C.P. do not apply); In re Union Bank, No. 7-1-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Nov. 8, 2012) (Durkin, J.).

Pursuant to V.R.C.P. 12(b)(1), this Court will grant a motion to dismiss a question if it raises issues beyond the scope of this Court's subject matter jurisdiction. In evaluating a Rule 12(b)(1) motion, we accept all of the nonmovant's uncontroverted factual allegations as true and construe them in the light most favorable to the nonmovant. Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245 (citation omitted).

We will also dismiss a question for failing to state a claim upon which relief can be granted. V.R.C.P. 12(b)(6). For Rule 12(b)(6) motions, this Court assumes that all of the nonmovant's well-pleaded factual allegations are true and accepts as true all reasonable inferences drawn therefrom. Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420 (citation omitted).

**Discussion**

Neighbors' Statement of Questions contains 26 Questions on 10 different issues. Hannaford argues for dismissal of most, if not all, of the Questions on the basis of multiple legal theories. We consider each of Hannaford's challenges to Neighbors' Statement of Questions in turn.

**I.      Questions A to I, L to O, U, and V [4]**

We first consider Hannaford's argument that the above Questions should be dismissed because they relate to issues that have already been fully and finally adjudicated, either before this Court or the Vermont Supreme Court. Hannaford asserts that the principles of finality and

---

[4] The issues that these Questions raise are: (1) stormwater-related issues, aside from the questions of the efficacy of the east-west swale and the back-up of stormwater onto Dark Star Properties LLC's (Dark Star) lot (Questions A to I); (2) traffic-related issues, other than the questions of mitigation of the congestion at the Mechanicsville Road and Vermont Route 116 intersection and the proper scope of post-development traffic studies (Questions L to O); and (3) issues related to the Town's official map and the Project's accommodation of mapped public facilities (Questions U and V).

issue preclusion bar Neighbors from attempting to relitigate these issues when Neighbors did not appeal the decisions that resolved them.

Neighbors assert that preclusive principles do not apply to these issues, regardless of whether they appealed the decisions resolving them, because the Supreme Court reversed this Court's ultimate decision to grant site plan approval in the 2017 Supreme Court Decision, requiring Hannaford to submit a new site plan application. Neighbors also argue against finality and preclusion because the present matter involves new parties who did not participate in the prior proceedings.

Pursuant to 24 V.S.A. § 4472(a), the "exclusive remedy" for a party who is not satisfied with the decision or act of a municipal panel is an appeal. If "any interested person" fails to appeal, then the decision or act becomes binding and cannot be contested, either directly or indirectly, in subsequent proceedings. 24 V.S.A. § 4472(d); In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 55, 199 Vt. 19.

The first legal question the parties raise regarding finality is whether the 2017 Supreme Court Decision should be treated as a remand of Hannaford's original site plan application to the DRB. If the 2017 Supreme Court Decision was functionally a remand, then the issues decided by the Supreme Court, or decided by this Court below but not appealed, remain final and binding. See Havill v. Woodstock Soapstone Co., 2007 VT 17, ¶ 10, 181 Vt. 577. It is undisputed that technically the Supreme Court reversed this Court's approval of the site plan and denied Hannaford site plan approval because the Project did not comply with the 75-foot setback.

The Supreme Court has previously recognized that a decision by this Court to deny a conditional use application "was in essence, if not technically, a remand." In re Appeal of Jolley Assocs., 2006 VT 132, ¶ 14, 181 Vt. 190. In Jolley, this Court denied the applicant's original conditional use application in part because, as part of conditional use review, the applicant had to show that the proposed project would meet certain site plan review standards. Id., ¶ 3. The applicant failed to make this showing, primarily because it had not submitted a site plan application. Id., ¶¶ 3-4. After this Court's denial of the conditional use application, the applicant submitted a site plan application to the municipal panel. Id., ¶ 4. In the intervening period, the town's bylaws had changed. The later bylaws prohibited one of applicant's proposed uses: a gas station. Id., ¶ 2.

3

One of the questions before the Supreme Court on appeal was whether "Jolley retained a vested right to seek approval of the proposed use even after its initial conditional use application had been denied." Id., ¶ 5. The Supreme Court concluded that the earlier bylaws preserved the applicant's ability to pursue site plan approval, even though this Court had denied the original application and the applicant had to reapply at the municipal level, because this Court had anticipated that the applicant would file a site plan application to correct the underlying error in its conditional use application. Id., ¶ 14. The Supreme Court found that this Court "indicated that it did not intend to finally resolve the issue of site plan compliance." Id. This led to the Supreme Court's ultimate conclusion that "Jolley retained a vested right to refile a conditional use application under the old bylaws." Id., ¶ 17. Thus, the first denial of the conditional use permit did not send the applicant back to the beginning of the application process; its rights remained vested and it could refile its conditional use application.

In the present matter, there are multiple indications that the 2017 Supreme Court Decision, while technically a denial, effectively functioned as a remand. In its denial of Hannaford's site plan application, the Supreme Court proceeded to evaluate a front-yard parking issue, stating:

> Notwithstanding our reversal of the site-plan approval on the setback issue, we address the front-yard-parking issue because, unlike the other issues in the site-plan appeal, it is likely to reoccur in the context of a new application for site-plan approval, regardless of whether Hannaford amends its site plan or obtains a setback amendment. See In re Taft Corners Assocs., 160 Vt. 583, 593 (1993) (in interest of judicial economy, *Court may reach issues likely to occur on remand*). Although we are not actually remanding the site plan matter, it would not make sense to force Hannaford to redesign its project in connection with a new application for site plan approval, if it chooses to do so, with continued uncertainty as to the effect of the front-yard restriction on parking.

Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶ 23 (emphasis added).

The Supreme Court anticipated that Hannaford would reapply for site plan approval, changing its proposal as necessary to respond to the noncompliance with the setback. The 2017 Supreme Court Decision implicitly expressed the principle that any issues it resolved were not to be disturbed during the later review of Hannaford's revised application, which is a functional consequence of a remand. Otherwise, its conclusions on the front-yard-parking issue would be superfluous, contrary to the Supreme Court's stated intention of resolving the uncertainty surrounding the issue for Hannaford's subsequent application. Further, adopting Neighbors'

position would render the Supreme Court's citation to Taft Corners for the principle that the Court may reach issues likely to arise on remand inappropriate and superfluous.

In addition, a subsequent Supreme Court decision expressly classifies the 2017 Supreme Court Decision as a remand. In In re Swanton Wind LLC, the Supreme Court cited the 2017 Supreme Court Decision for the proposition that the Court may preemptively resolve arguments likely to arise on remand. 2018 VT 141, ¶ 10. In the explanatory parenthetical accompanying the citation to the 2017 Supreme Court Decision, the Supreme Court explained that the case "observ[ed] Court may review argument likely to recur on remand in interest of judicial economy." Id. This provides another indication that the Supreme Court conceived of the 2017 Supreme Court Decision as a remand in effect. Accordingly, we do the same. As a result, the issues decided by this Court and not appealed, as well as those that the Supreme Court resolved, remain final and binding in the present matter.

Even without such express indications that the Supreme Court intended its decision to function as a remand, the unique legal context surrounding land development appeals carries implications for how this Court applies the principles of finality. See, e.g., Lathrop, 2015 VT 49, ¶ 58 (discussing the land development-specific successive application doctrine, an exception to the rigid finality rules of § 4472(d)). Hannaford presented its first site plan to the DRB over eight years ago. Since that time, the parties have litigated various elements of the Project at length before municipal tribunals, this Court, and the Supreme Court. Hannaford now seeks to modify isolated aspects of its site plan application to respond directly to the 2017 Supreme Court Decision. Despite multiple indications that the 2017 Supreme Court Decision should serve as another step along the way through the review process, towards the ultimate goal of a conclusive final decision on the Project, Neighbors argue that because the Supreme Court denied Hannaford's previous site plan application on the basis of one issue, none of the issues decided over the long course of the Project remain concluded.

The legal, and common sense, dimensions of land development litigation do not compel such a result. As discussed above, appellants preserve issues for this Court to review on appeal through a Statement of Questions pursuant to V.R.E.C.P. 5(f). Any issue not identified in the Statement of Questions is not a subject of the appeal and becomes final under 24 V.S.A. § 4472(d); Garen, 174 Vt. at 156. Each issue preserved for appeal in the land development context is analogous to a distinct cause of action initiated before the Civil Division. The ultimate decision

of whether to grant or deny a permit is the direct result of the conclusions reached on each discrete issue, comparable to the remedies provided by a Civil Division Court on the basis of its decisions on each of the substantive matters before it. Thus, each issue decided by this Court that is not appealed, or which is finally adjudicated before the Supreme Court, becomes final and binding, irrespective of the ultimate decision of whether to grant or deny the permit. We note that this conclusion is set firmly in the context of the successive application doctrine, which may require an entirely new review for applications that are substantially changed. See Jolley, 2006 VT 132, ¶ 12; In re Armitage, 2006 VT 113, ¶ 6, 181 Vt. 241.

Further, we cannot find support for Neighbors' claim that the decisions by this Court that were not appealed do not qualify as final judgments for preclusion purposes.[5] See Scott v. City of Newport, 2004 VT 64, ¶ 12, 177 Vt. 491 (citing Restatement (Second) of Judgments § 13, cmts. a, g) (discussing factors to be weighed when considering whether a judgment is final). The parties were fully heard on the issues raised by the aforementioned Questions, the Court supported its decision with a reasoned opinion, an appeal was available, and the conclusions reached were procedurally definite. See Restatement (Second) of Judgments § 13, cmt. g. Neighbors do not argue otherwise. When an applicant adjudicates an issue related to its proposed development, receives a favorable disposition on the issue that is definite, reasoned, and procedurally sound, and that disposition is not appealed, the applicant is entitled to trust that subsequent versions of the application that do not alter any parts of the proposal relevant to that issue will similarly be accepted. See Daiello v. Town of Vernon, 2018 VT 17, ¶ 12 (citation omitted) (discussing the benefits of finality). While an applicant who makes significant changes to its proposal might not

---

[5] This Court accepts Neighbors' January 30, 2019 sur-reply memorandum because it is useful in our evaluation of the question presented. See New England Youth Theatre, Inc. v. Envtl. Compliance Servs., Inc., No. 138-4-12 Wmcv, slip op. at 5-6 (Vt. Super. Ct. Feb. 26, 2013) (Carroll, J.) (citing In re Appeal of the Town of Colchester, No. S0933-10 CnC (Vt. Super. Ct. Jan. 28, 2011) (Toor, J.)) (discussing the Court's authority to accept sur-replies that clarify the issues).

We do not, however, agree with their sur-reply's characterization of Hannaford's argument or its application of the finality principles. Neighbors argue that the position we recognize here—that land development cases are determined issue-by-issue and that decisions resolving discrete issues that are not appealed become final, regardless of whether the permit is ultimately approved or denied—contravenes Supreme Court precedent. But the Supreme Court has not spoken directly to the situation presented by this matter. Further, as discussed, the unique procedural qualities inherent to large, multi-faceted land development cases require this Court to adapt the traditional rules of finality, which do not map onto the present situation as cleanly as Neighbors would lead us to believe.

be able to claim the benefit of preclusion, an applicant who makes minor changes that do not affect settled issues does not sacrifice all of the headway it has made up to that point.[6]

In addition, as Neighbors' sur-reply concedes, the fact that there are new parties in the present action who did not participate before this Court or the Supreme Court in the prior proceedings does not obviate the preclusive effect of those prior judgments.

Neighbors correctly note that the doctrines of claim and issue preclusion only bind a party who participated as a party, or in privity with a party, in the earlier action. Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 461 (2000) (citation omitted) (discussing issue preclusion); Faulkner v. Caledonia Cnty. Fair Ass'n, 2004 VT 123, ¶ 8, 178 Vt. 51 (citation omitted) (discussing claim preclusion). This Court, however, has recognized that "[s]ection 4472 is broader than claim and issue preclusion, in that under it persons who were not parties to a prior appeal can be bound by the final determination in that appeal." In re Sisters & Bros. Inv. Grp., LLP, No. 106-5-06 Vtec, slip op. at 6 (Vt. Envtl. Ct. Feb. 21, 2007) (Durkin, J.). Thus, the presence of interested parties who did not previously participate in the appeals related to the Project does not undermine the preclusive effect of the prior decisions.

In sum, because of the unique nature of land development litigation, which can sprawl across a number of dockets and require submission of multiple applications, we conclude that the principles of finality must be applied to preclude the relitigation of issues previously decided.

In the present matter, the issues that were decided by this Court and not appealed, or that were finally adjudicated before the Supreme Court, are all stormwater-related issues other than the questions of the east-west swale's efficacy and the back-up of stormwater onto the Dark Star lot, and all traffic-related issues other than the questions of mitigation of congestion at the intersection of Mechanicsville Road and Vermont Route 116 and the proper scope of post-development traffic studies. Accordingly, Questions A through I, related to stormwater, and Questions L through O, related to traffic issues, are **DISMISSED**.

---

[6] We again note that our conclusions here do not limit the successive application doctrine in any way. Our holding is specific to the situation presently before us, where Hannaford made minor revisions to its second application in response to the 2017 Supreme Court Decision, which indicated that its site plan denial contained elements of a remand. See, e.g., Jolley, 2006 VT 132, ¶ 12 (a zoning board can entertain a successive application that responds to conditions or objections of the court or other parties).

Hannaford argues that Questions U and V, related to the Town's official map and the Project's accommodation of mapped public facilities, should also be dismissed as issues that were finally adjudicated before this Court.

When Hannaford's original site plan application was before this Court on appeal, we reached the conclusion that the prior version of the Project accommodated mapped public facilities pursuant to 24 V.S.A. § 4421. Hinesburg Hannaford SP Approval, No. 163-11-12 Vtec at 11-12 (Apr. 12, 2016). This conclusion was not appealed, lending it the finality we impart to the similar conclusions discussed above. Hannaford, however, has not made it clear to this Court that the present site plan application proposes to accommodate the relevant mapped public facilities in the same manner as the original site plan application we approved. A factual record is necessary for this Court to determine whether Hannaford's proposal has changed substantially regarding this issue. Thus, Hannaford's motion to dismiss Questions U and V as questions that were finally adjudicated is **DENIED**.[7]

## II. Whether the 2009 or 2016 Zoning Regulations apply to Hannaford's application

The question of which version of the Zoning Regulations applies to Hannaford's present site plan application is closely related to the issue discussed above in Section I. Hannaford asserts that the 2009 Zoning Regulations, which governed its original site plan application, should apply. Hannaford argues that because the Supreme Court's denial of its first application was more akin to a remand, and only isolated features of the present site plan differ from the original, there was no loss of its vested rights under the 2009 Zoning Regulations.

Neighbors argue for application of the 2016 Zoning Regulations, asserting that: (1) Hannaford's initial application was incomplete, so rights under the 2009 Zoning Regulations did not vest, and (2) the Supreme Court's denial of Hannaford's first application means that the matter presently before the Court involves an entirely new application, subject to the Zoning Regulations in effect at the time it was submitted.

Zoning rights generally vest when an application is submitted. Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181-82 (1981). A developer must submit a "proper application" for rights

---

[7] Because we determine that it is not clear whether Hannaford's present application accommodates the mapped public facilities in the same manner as its previous proposal, we cannot conclude that the present application's accommodation of mapped public facilities was finally adjudicated. Accordingly, Hannaford's parallel motion "for confirmation of final adjudication regarding accommodation of mapped community facilities" is also **DENIED**.

under the then-current regulations to vest. In re Ross, 151 Vt. 54, 57 (1989). Proper applications are "validly brought and pursued in good faith." In re Handy, 171 Vt. 336, 351 (2000) (internal quotations omitted). Applications must be complete to prevent landowners from "easily avoid[ing] regulatory requirements by submitting a request for a permit based on partial and insufficient information." Ross, 151 Vt. at 59.

Neighbors first argue that Hannaford's initial site plan application was incomplete, so rights under the 2009 Zoning Regulations did not vest in the first place. They premise their argument on the Supreme Court's conclusion that the 75-foot setback in the 1987 subdivision plat, which Hannaford's original site plan did not reference, applied to Lot 15. They assert that any complete application needed to acknowledge the setback.

Hannaford's original application did not reference the setback, but the applicability of the 75-foot setback was an unresolved issue before this Court in the appeal of the application. Hinesburg Hannaford SP Approval, No. 163-11-12 Vtec, slip op. at 20-23 (Apr. 12, 2016). This Court concluded that the 1987 subdivision plat did *not* impose enforceable setback conditions. While the Supreme Court reversed this conclusion on appeal, it would be entirely unreasonable to require applicants to predict the outcome of litigation on contested project limitations for their application to be deemed complete and for rights to vest. Therefore, we conclude that rights under the 2009 Zoning Regulations vested in Hannaford's original, complete application.

Neighbors next argue that the present site plan application is an entirely new application that does not get the benefit of review under the earlier 2009 Zoning Regulations.

The denial of an application ordinarily requires the applicant to substantially revise its proposal and to submit a new application. Jolley, 2006 VT 132, ¶ 16 (citing Armitage, 2006 VT 113, ¶ 6). The vested rights of the original application typically do not transfer to the new application, which would be subject to the regulations applicable at the time of its filing. Id. (citing Smith, 140 Vt. at 181-82). The Supreme Court has identified narrow exceptions to this rule. See, e.g., In re Sisters & Bros. Inv. Grp., LLP, 2009 VT 58, 186 Vt. 103.

Most notable among these exceptions is Jolley, discussed above. 2006 VT 132. Again, in that case the applicant's original conditional use application was denied by this Court. In deciding what version of the bylaws applied to the applicant's second application, the Jolley Court concluded "that Jolley retained a vested right to refile a conditional use application under the old bylaws . . . ." Id., ¶ 17. The applicant's right to review under the earlier regulations remained

vested because, first, the original application was complete when submitted, mitigating the concern that the applicant submitted an application as a placeholder to take advantage of an earlier set of regulations before they were amended. Id., ¶ 16. Additionally, the applicant revised the application to respond to the conclusions of this Court, which the Supreme Court did not consider "the sort of substantial revision that should dictate a loss of vested rights." Id. Lastly, the Supreme Court concluded that the applicant's rights remained vested because the applicant could have reasonably relied on indications from this Court that denial of the original application would not remove the vested rights upon reapplication. Id.

The conditions which led the Supreme Court to conclude that rights remained vested in Jolley also prevail here. First, Hannaford's original application was detailed and complete, as evidenced by the depth of the discussion of the Project's features in the numerous coordinated appeals before this Court and the Supreme Court. See, e.g., Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶¶ 1-9 (setting forth a detailed description of the Project and the relevant issues). Further, the 2009 Zoning Regulations were not amended until 2013, three years after Hannaford first submitted its site plan for review. These considerations mitigate the concern that Hannaford originally submitted its application to manipulate the review process and secure review under an earlier set of regulations.

Next, Hannaford revised its present application in response to the setback concern raised by the Supreme Court in the 2017 Supreme Court Decision. As in Jolley, where the applicant revised its proposal to remove a canopy over gas station pumps in response to this Court's decision, Hannaford's revision of the setbacks is not the sort of substantial alteration that dictates a loss of vested rights. New applications that are substantially revised relative to an original application that was denied should be reviewed as if there was no prior application. See Smith, 140 Vt. at 181-82. But where an applicant modifies an isolated feature of its proposal in response to feedback from this, or the Supreme, Court, procedural impediments to those changes should be mitigated. See Sisters & Bros., 2009 VT 58, ¶ 21 (discussing the policy of encouraging minor revisions in response to feedback from the court or interested parties).

Further, as discussed in Section I, the 2017 Supreme Court Decision contains multiple indications that its denial of Hannaford's original site plan application would not interrupt the continuity of its vested rights. See, e.g., Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶ 23

10

(reaching the front-yard parking issue because it would likely arise with Hannaford's continued pursuit of a permit).

Lastly, Neighbors' position would require this Court to apply the 2016 Zoning Regulations to any unresolved issues, while leaving undisturbed those issues that were finally adjudicated under the 2009 Zoning Regulations. For instance, this Court would need to reconcile certain stormwater issues already decided under the 2009 Zoning Regulations with the remaining stormwater issues, which Neighbors would have us decide under the 2016 Zoning Regulations. This convoluted result of Neighbors' position supports our conclusion.

Based on the foregoing, any of Neighbors' Questions that rely on the 2016 Zoning Regulations alone are **DISMISSED** because Hannaford's present application retains vested rights under the 2009 Zoning Regulations. Because many of the sections in the two versions of the Zoning Regulations appear to overlap, we presume many of the Questions in Neighbors' Statement of Questions are not affected by our conclusion. The parties, however, did not specify which questions are dependent on the 2016 Zoning Regulations alone. Thus, we order the parties to confer and identify for the Court the Questions affected by this decision.

### III.    Questions A, B, D, E, G, U, and V [8]

Hannaford argues that these Questions should be dismissed because each relates to an issue that led the DRB to *deny* Hannaford's site plan application. Hannaford asserts that Neighbors, as the project opponents, cannot raise issues underpinning the DRB's denial with which they presumably agree.[9]

We do not need to reach the question of whether Neighbors are entitled to cross-appeal on issues that the DRB decided in favor of their position. Hannaford acknowledges that it also appeals each of the DRB's reasons for denying its permit and that Neighbors' questions are fully included in its own. Neighbors do not dispute this. Thus, we conclude that the aforementioned

---

[8] Both parties agree that these questions relate to the stormwater and mapped public facility issues that served as a basis for the DRB's denial.

We note that Hannaford argues for dismissal of Questions A, B, D, E, and G, relating to stormwater issues, on this basis. Because we dismiss these Questions in Section I as questions that were finally adjudicated in prior proceedings, our discussion in this section is only relevant to Questions U and V, relating to the Project's accommodation of mapped public facilities.

[9] Hannaford makes clear that it is not challenging Neighbors' right to respond to Hannaford's arguments as to why the Court should decide these issues differently from the DRB below.

11

Questions are repetitious of questions contained in Hannaford's Statement of Questions. Hannaford's motion to dismiss is **DENIED** as moot with respect to these questions.

## IV.    Question X

Neighbors' Question X asks whether the Town and Dark Star are necessary co-applicants under § 4.1.5 of the Zoning Regulations because Hannaford's stormwater management plan implicates land owned by the Town and Dark Star.[10]  Hannaford moves to dismiss this Question under V.R.C.P. 12(b)(6), alleging that it fails to state a claim upon which relief can be granted because this Court has already answered it in the negative.

In their January 7, 2019 memorandum in opposition, Neighbors request that this Court convert Hannaford's Rule 12(b)(6) motion to a V.R.C.P. 56 motion for summary judgment.  See V.R.C.P. 12(b) ("If, on a motion asserting the defense numbered (6) . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").  Neighbors also submit a cross-motion for summary judgment under V.R.C.P. 56.

We do not need to resort to Rule 56 to decide Hannaford's motion.[11]  This Court has already determined that § 4.1.5 does not require Hannaford to recruit any co-applicants for its municipal permit application.  See Hinesburg Hannaford CU Approval, Nos. 129-9-12 Vtec, et al., slip op. at 11-12 (Vt. Super. Ct. Envtl. Div. Sept. 16, 2015) (Walsh, J.); see also Hinesburg Hannaford CU Approval, Nos. 129-9-12 Vtec, et al., slip op. at 6-7 (Vt. Super. Ct. Envtl. Div. Oct. 27, 2015) (Walsh, J.) (denying motion to reconsider the issue).  Because this became a final and binding decision when it was not appealed, Neighbors cannot make use of this site plan appeal to relitigate the issue.[12]  Neighbors have not argued that Hannaford's present application differs from its original site plan application in a way that would nullify the preclusive effect of this Court's prior decision.  Neighbors' general arguments against the preclusive effect of this Court's previous decisions are addressed above in Section I.

For these reasons, Question X is **DISMISSED**.

---

[10] Section 4.1.5 is the same in both the 2009 and 2016 Zoning Regulations, so our conclusion in Section II does not affect this discussion.

[11] For this reason, Neighbors' cross-motion for summary judgment on this question is **DENIED** as moot.

[12] To the extent Neighbors recast their argument in a different mold, asserting that this Court did not answer the question of whether the stormwater-related construction constitutes land development requiring a permit, they indirectly contest this Court's previous decision.  See 24 V.S.A. § 4472(d) (mandating that interested persons affected by a decision who do not appeal it "shall not thereafter contest, either directly or indirectly, the decision or act . . . .").

**V.    Questions S and T**

With Questions S and T, Neighbors challenge the authority of this Court, and the DRB below, to consider Hannaford's site plan application before there is a final judgment approving Hannaford's subdivision amendment in the other appeal currently pending before this Court.

As stated previously, Hannaford's present site plan incorporates its proposed revision of the setbacks in the subdivision plat in response to the 2017 Supreme Court Decision. Neighbors argue that conditions in subdivision permits, such as setbacks, become part of the local zoning law once they are approved. The reduced setbacks Hannaford has proposed, but which are still pending before this Court, have not yet taken legal effect. Therefore, Neighbors assert, because Hannaford's site plan application depends on the proposed setbacks, its application depends on a future, favorable change in the law.

Neighbors then introduce the vested rights doctrine, which directs the tribunal reviewing permit applications to apply the law in place at the time the application is filed, to argue that Hannaford cannot apply for site plan approval on the basis of reduced setbacks it has proposed, but which have not yet become law. In Neighbors' view, this Court does not have jurisdiction over the site plan application until the subdivision amendment appeal is fully and finally adjudicated.

Neighbors are correct in pointing out that the subdivision amendment is vital to the success of Hannaford's site plan application. Noncompliance with the setbacks led the Supreme Court to deny the original site plan application. Neighbors err in asserting that this somehow strips the Court of jurisdiction over the site plan appeal.

In so arguing, Neighbors overstate the rule that subdivision permit conditions become part of the local zoning law governing land development. They base their argument on an isolated statement: "A violation of a condition of a subdivision permit would be a violation of the zoning ordinance itself." In re Willowell Found. Conditional Use Certificate of Occupancy, 2016 VT 12, ¶ 9, 201 Vt. 242 (quoting In re Robinson, 156 Vt. 199, 202 (1991)).

The Supreme Court has leveraged this statement, originally derived in Robinson, to emphasize that permit conditions are *enforced* in the same way as a zoning ordinance. That is to say, once a permit—any municipal permit, not necessarily just subdivision permits—takes effect, violations of that permit are handled in the same manner as ordinance violations. When the

Supreme Court first made this statement in Robinson, it cited to two cases discussing the enforceability of permit conditions generally. See Kulak v. Zoning Hearing Bd. of Bristol Township, 128 Pa.Commw. 457, 461-62 (1989) (holding that the violation of a special exception in a use permit should be enforced like a violation of the zoning ordinance); In re Meaker, 156 Vt. 182, 191 (1991) (Dooley, J., dissenting) (citation omitted) (arguing that the majority's concerns about the enforceability of a conditional use permit were unfounded because "[u]ltimately, the permit conditions can be enforced by enforcement actions since the applicants would, in effect, be operating without a permit."). The rule Neighbors seek to attenuate is limited to the manner of enforcing permit conditions, not to the vesting of rights.

Neither Robinson, nor the other cases that apply this principle, equate permit conditions with zoning regulations to such an extent that vesting rights are affected. Ultimately, Neighbors' position is untenable because projects requiring numerous, interrelated permits, would need to acquire and finally adjudicate permits in a specific sequence, dramatically elongating the application process. Or worse, in some circumstances, applicants may be obliged to acquire each permit before the other, with impossible circularity, to ensure that the conditions secured by each permit vest when the other is applied for.

Instead, this Court has repeatedly recognized that applicants are not required to apply for all their permits at one time and in one proceeding. Hinesburg Hannaford CU Approval, Nos. 129-9-12 Vtec, et al., at 3 (Oct. 27, 2015) (citing In re Conlon CU Permit, No. 2-1-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.)). To extend the statement made in Robinson so far would render the permit application process inefficient and unworkable.

In practice, this Court has considered subdivision applications alongside site plan applications. See, e.g., Hannaford SD Revision Application, Nos. 68-5-14 Vtec, et al. (Vt. Super. Ct. Envtl. Div. Apr. 12, 2016) (Walsh, J.). The Supreme Court has done the same. See, e.g., In re Maple Tree Place, 156 Vt. 494 (1991). This corresponds with our broad powers to coordinate proceedings under V.R.E.C.P. 2(b). Ultimately, this type of coordinated review is vital to the Court's responsibility to "ensure summary and expedited proceedings" pursuant to V.R.E.C.P. 1 and to bring about "the just, speedy, and inexpensive determination of every action" under V.R.C.P. 1.

Whether a decision on Hannaford's subdivision application should precede this Court's review of Hannaford's site plan application is a question we will consider in our deliberations, and one that is within our coordination powers.

For these reasons, we conclude that this Court has jurisdiction over Hannaford's site plan application even while the subdivision application appeal is pending. Accordingly, Questions S and T are **DISMISSED**.

## VI.     Questions P and Q

Neighbors' Questions P and Q also relate to Hannaford's proposed subdivision amendment, which is the subject of another appeal before this Court.

Question P asks whether the Project satisfies the setback requirements of the subdivision plat if this Court does not approve Hannaford's subdivision amendment in the related appeal. The 2017 Supreme Court Decision precludes this question. The Supreme Court has already decided that the Project as proposed does not satisfy the 75-foot setback requirement in the 1987 subdivision plat. If Hannaford does not succeed in amending the subdivision's setbacks, this Court could not contravene the Supreme Court's previous decision. Accordingly, Question P is **DISMISSED**.

Question Q asks whether the Project meets the proposed setback requirements. In Hannaford's January 24, 2019 reply memorandum in support of the present motion to dismiss, it confesses to misunderstanding the Question in its original motion and concedes that Question Q is proper. We agree. Neighbors are entitled to question whether Hannaford's present site plan properly incorporates the setback requirements as proposed. Thus, Hannaford's motion to dismiss is **DENIED** with respect to Question Q.

## VII.     Question 1

Neighbors' Question 1 broadly asks whether Hannaford's application meets the site plan requirements of the Zoning Regulations. Question 1's 25 subparts go on to define in detail the issues Neighbors wish to cross-appeal. Neighbors do not object to the dismissal of Question 1. We conclude that Question 1 is over-broad and the remaining Questions articulate the issues Neighbors wish this Court to consider on appeal more specifically. Thus, we **DISMISS** Question 1.

**Conclusion**

Because Questions A to I and L to O raise issues that were already finally adjudicated before this Court or the Supreme Court, these Questions are **DISMISSED**. Questions U and V are not similarly dismissed because the record does not make clear whether Hannaford's present application accommodates mapped public facilities in substantially the same manner as the application previously approved by this Court. Thus, Hannaford's motion is **DENIED** with respect to Questions U and V.

Hannaford retains a vested right under the 2009 Zoning Regulations. Thus, any Questions premised on the 2016 Zoning Regulations alone are **DISMISSED**. Because the parties do not specify which of Neighbors' Questions are implicated by the vesting rights issue, the Court orders the parties to confer and identify which Questions this conclusion affects.

We **DENY** as moot Hannaford's motion to dismiss with regards to Questions A, B, D, E, G, U, and V because both parties agree that Hannaford's Statement of Questions fully includes each of these Questions as the reasons for the DRB's denial of the application below. This conclusion is only relevant for Questions U and V because Questions A, B, D, E, and G are dismissed as finally adjudicated.

As this Court previously decided the issue of whether the Zoning Regulations require a co-applicant for Hannaford's proposed stormwater mitigation, Question X is **DISMISSED**.

Questions S and T are **DISMISSED** because applicants that require multiple permits for a project are entitled to apply for those permits at separate times in separate proceedings. While zoning and subdivision permits are enforced in the same manner as zoning ordinances, pending permits and the conditions they prescribe do not limit applicants through the vesting rights doctrine.

Because Question P raises an issue that was finally adjudicated before the Supreme Court, the Question is **DISMISSED**. On the other hand, Neighbors are entitled to ask whether Hannaford's site plan application corresponds with the setbacks as proposed in its subdivision application. Accordingly, Hannaford's motion to dismiss Question Q is **DENIED**.

Finally, because Question 1 states generally what the remaining questions state specifically, without contributing more, the Question is **DISMISSED**.

Electronically signed on March 08, 2019 at 01:30 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division